Paul RANKIN *v.* STATE OF Arkansas

CA CR 94-278                                        942 S.W.2d 867

Court of Appeals of Arkansas
Division I
Opinion delivered April 23, 1997

*John Joplin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, Paul Rankin, was charged by information with the offense of first-degree murder in connection with the shooting death of Charlotte Geiger. After a jury trial, appellant was found guilty of second-degree murder and was sentenced to a term of twenty years in prison. Appellant raises four issues for reversal of his conviction. He argues that: (1) the trial court erred in denying his motion for a directed verdict; (2) the trial court erred in denying his motion to suppress evidence seized in a warrantless search; (3) the trial court erred in allowing irrelevant and prejudicial testimony; and (4) the trial court erred in denying appellant's motion for a recess to allow an expert witness to testify. We find merit in the last issue raised. Consequently, we reverse and remand for a new trial.

Charlotte Geiger, the victim, owned a duplex at 701 North 8th Street in Fort Smith. She lived in one apartment while the

other was occupied by James Stevenson. Ms. Geiger also owned a residence at 715 North "G" Street, which was located behind the duplex. It was said that these homes were in a bad neighborhood and that Ms. Geiger was always careful about locking her door.

There was testimony that on February 1, 1993, appellant, Mr. Stevenson, and Charles Storey were helping Ms. Geiger make repairs to the "G" Street residence. Mr. Stevenson testified that appellant was intoxicated and that appellant and Ms. Geiger had argued about the way appellant was doing the work. When they finished late in the afternoon, Ms. Geiger went inside her home and Mr. Stevenson and appellant remained outside for a brief time talking. Mr. Stevenson later visited a friend at the bus station and returned to his apartment. At around 6:30, Mr. Stevenson left again to get a friend to come help him with repairs in his apartment. He said that he heard the sound of moaning coming from Ms. Geiger's apartment when he left. Shortly after Mr. Stevenson and his friend returned, they heard a knock at the door. Mr. Stevenson opened the door to find Ms. Geiger, covered in blood, standing in the hallway separating their apartments. She was taken to the hospital where it was learned that she had been shot twice in the face. She died three days later without identifying her assailant. It was said that her wounds had been caused by .25 caliber bullets.

The investigating officers conducted a warrantless search of Ms. Geiger's apartment after speaking with witnesses at the hospital. During the search, they discovered a large amount of blood on the bed, as well as on the floor, a telephone, and another piece of furniture. There were two shell casings at the foot of the bed and an empty holster was found sitting on a coffee table. There was testimony that appellant had acquired the holster with an X-Cam .25 caliber handgun in a trade with a friend for stereo equipment. There was also testimony that appellant had pawned the holster and gun on November 21, 1992, and that he had retrieved those items from the pawn shop the day of the murder. Despite extensive efforts to locate this weapon, the police were unable to find it.

Appellant was arrested on the morning of February 2, 1993, as he was walking toward the back door of the "G" Street residence. There were scratches and lacerations on his forehead and hands, and there appeared to be blood on his clothing. In an interview with the police, appellant told the officers that on the day of the murder he had gone to sleep in his bed after working on the house and that he had slept all night. He recalled that he had argued with Ms. Geiger, but he could not remember what had happened in the argument. When asked about his pistol, appellant gave differing accounts of its whereabouts. First, he said that it had been stolen, but he also told them that he had last seen it on a coffee table in Ms. Geiger's apartment the previous day. The officers testified that throughout the interview appellant responded to questioning by saying that he had either blacked out and could not remember, or that he had no answers to their questions. For instance, when asked if he had shot Ms. Geiger, appellant responded, "I have no answer for that." When asked to deny that he had shot her, appellant replied, "I have no answer for that as well."

Appellant first contends that the trial court erred in denying his motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Bradford v. State*, 325 Ark. 278, 927 S.W.2d 329 (1996). In order to preserve this issue on appeal, a defendant must move for a directed verdict at the conclusion of the evidence presented by the prosecution and again at the close of the case; otherwise, any question pertaining to the sufficiency of the evidence to support a jury's verdict is waived. Ark. R. Crim. P. 33.1. Here, appellant failed to make the required motion after the State had presented rebuttal testimony. Therefore, this issue is not preserved for appeal, and we do not consider it. *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Christian v. State*, 318 Ark. 813, 889 S.W.2d 717 (1994).

As his second point on appeal, appellant argues that the trial court erred in denying his motion to suppress evidence seized in the search of Ms. Geiger's apartment. The State contends, as was argued below, that appellant lacks standing to protest the search of Ms. Geiger's home. In reviewing a trial court's denial of a motion to suppress evidence, we make an independent determi-

nation based on the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Phillips v. State*, 53 Ark. App. 36, 918 S.W.2d 721 (1996).

At the suppression hearing, evidence was introduced revealing that Ms. Geiger was the sole owner of the duplex at 701 North 8th Street. It was also disclosed that the relationship between appellant and Ms. Geiger was that of "boyfriend and girl-friend" and that appellant had stayed at Ms. Geiger's apartment. Prescriptions and medicine bottles bearing appellant's name were found in the apartment. On the rights form appellant executed before being interviewed by the police, he recorded his address as 701 North 8th Street.

Evidence was also admitted showing that appellant had listed his address as 715 North "G" Street on transaction records that appellant had filled out and signed at a pawn shop on November 21, 1992, and February 1, 1993. Also, a computer printout from the pawn shop was introduced showing appellant's pawning activity over a three-month period. The printout shows appellant's address as 715 North "G" Street. The trial court also heard the testimony of the officers who had interviewed appellant. One officer testified that appellant said that "he remembered working at his house" on the day of the murder and that afterwards he laid down on the bed in his room and went to sleep. The officer stated that he had not seen appellant asleep in Ms. Geiger's apartment at the time of the search, and he agreed that, if appellant had been telling the truth, he was sleeping in a room in another residence.

■ The protection of the Fourth Amendment guarantees the right of people to be secure against unreasonable searches and seizures. *Bernal v. State*, 48 Ark. App. 175, 892 S.W.2d 537 (1995). The rights secured by the Fourth Amendment are personal in nature. *Littlepage v. State*, 324 Ark. 361, 863 S.W.2d 276 (1993). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Bernal v. State*, *supra*. A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a

third person's premises or property. *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992). The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996). It is well settled that a proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights have been violated. *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995). This court will not reach the constitutionality of a search where a defendant has failed to show that he had a legitimate expectation of privacy in the object of the search. *Littlepage v. State, supra.*

▮ ▮ Based on the foregoing evidence introduced at the hearing, we hold that appellant failed to establish a legitimate expectation of privacy in Ms. Geiger's residence. The evidence suggests that appellant lived in the house on "G" Street and that he may have occasionally stayed with Ms. Geiger in her apartment. However, the mere fact that he frequently stayed there does not in and of itself give rise to a reasonable expectation of privacy. *Davasher v. State, supra.* Appellant did not own the premises, and absent from the record is any indication that appellant maintained control over Ms. Geiger's apartment. *Id.* We are aware of the Supreme Court's opinion in *Minnesota v. Olson*, 459 U.S. 91 (1990), where the Court pronounced a *per se* rule that an accused's status as an overnight guest is, alone, enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable. *See also Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994). Even so, there was no showing that appellant had been an overnight guest at the time the search occurred. *See Marshall v. State*, 316 Ark. 753, 875 S.W.2d 814 (1994). Considering the totality of the circumstances, we cannot say that the trial court's decision is clearly against the preponderance of the evidence.

Appellant next challenges the trial court's ruling permitting the State to elicit testimony from Bruce Garner regarding a conversation he had with appellant. Over appellant's objection, Mr. Garner testified that he, appellant, and John Murry were drinking beer one night three weeks before the murder. He said they were

all fairly intoxicated and started talking about how easy it was to get away with committing crimes, especially the crime of murder. Mr. Garner testified that appellant commented that "all you really had to do was not let there be any witnesses, destroy the weapon, and whatever evidence there was, and just never admit to anything and you'd get away with it." Garner added that, to get rid of the weapon, appellant said to "take the shortest route to the river and throw it in." Appellant contends that this testimony was not relevant and that any probative value it may have had was outweighed by the danger of unfair prejudice.

■ Rule 401 of the Arkansas Rules of Evidence defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995). Rule 403 allows a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. This weighing is also a matter left to the trial court's sound discretion and will not be reversed absent a showing of manifest abuse. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996).

■ The statements attributed to appellant bear a close relation to the facts surrounding the murder. There were no witnesses; the murder weapon was never located; and the evidence demonstrated that appellant was evasive in his responses to questioning by the police. In this respect, the testimony is not unlike that at issue in *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993). There, the appellant was convicted of murdering his wife whose torso was found in a cooler floating in a lake. The court found no abuse of discretion when the trial court admitted the testimony of the appellant's ex-wife, who testified that appellant had threatened to kill her and had told her that he would cut her body into pieces so that she would never be found. It was held that the testimony was admissible under Rule 404(b) to show intent, plan and identity. The conversation in this case was said to have occurred only

three weeks before the murder. Given the distinct correlation between the statements made by appellant and the evidence presented at trial, we can find no abuse of discretion in the trial court's rulings that the testimony was relevant and that its probative value exceeded any danger of unfair prejudice.

Appellant's remaining argument is that the trial court erred in denying his request for a brief recess to allow the testimony of an expert witness who was in transit. We agree.

Appellant's clothing, which appeared to be bloodstained, was sent to the State Crime Lab for testing. Edward Vollman, a serologist there, testified at trial on behalf of the defense that there was human blood on appellant's shirt. He stated that he had performed other tests on the shirt but that the results were inconclusive. He could not determine the type of the blood because there was an insufficient amount of material for testing. He also identified human blood on appellant's sweater. He could not state that the blood found on these articles of clothing belonged to either appellant or Ms. Geiger. At the direction of the Fort Smith Police Department, he submitted samples of what little blood remained on the clothes to the lab of the Federal Bureau of Investigation in Washington, D.C., for DNA testing.

After the State rested its case, appellant advised the court that in addition to other witnesses he intended to call a Mr. Dedmon who apparently was not in attendance. The deputy prosecuting attorney noted that it was his understanding that Mr. Dedmon was coming from Washington, D.C.; that he had made a great effort to be at trial; and that the State had no objection to any ruling the court might make regarding this witness. The prosecution also offered to enter into a stipulation, if necessary. At 9:48 a.m., appellant's counsel informed the court that Mr. Dedmon had not yet arrived, and he requested a brief recess. The court remarked that the testimony of this witness would be cumulative. However, the deputy prosecutor advised the court that the DNA testing revealed that the identifiable blood from the samples came from the appellant, and not Ms. Geiger. The court then stated its preference that the parties agree to a stipulation of the witness's testimony rather than cause a delay of trial. Ten minutes later, appellant's counsel stated that Mr. Dedmon's plane was on time

and was due to arrive at 11:00 a.m., and he again moved for a continuance. The trial court denied the motion after counsel eschewed the prosecution's offer to stipulate the witness's proposed testimony. Mr. Dedmon's report was admitted into evidence, and appellant made a proffer of Mr. Dedmon's testimony that the blood on appellant's shirt was not that of the victim, but that it had characteristics of appellant's blood.

At 11:40 a.m., the State had presented testimony in rebuttal, the jury had been instructed, and the attorneys had made their closing arguments. The court sent the jury to lunch for an hour before beginning its deliberations. At 11:50, appellant's counsel informed the court that Mr. Dedmon had arrived and was in the courtroom. Counsel asked the court to either permit the witness to testify or grant a mistrial. The trial court declined to reconsider its ruling.

■ It is well settled that a motion for a continuance is addressed to the sound discretion of the trial court, and a decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Wilson v. State*, 320 Ark. 142, 895 S.W.2d 524 (1995). The appellant bears the burden of proving that the trial court's denial of a motion for continuance was an abuse of discretion, and that burden entails a showing of prejudice. *Id.*

■ Motions for continuance are governed in part by Rule 27.3 of the Arkansas Rules of Criminal Procedure, which provides:

The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

The supreme court has outlined several factors to be considered by a trial court in deciding a continuance motion:

(1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true.

*Hill v. State*, 321 Ark. 354, 902 S.W.2d 229 (1995).

Here, the appellant was accused of first-degree murder. The case mounted by the State was built entirely on circumstantial evidence. The State elicited testimony concerning the copious amount of blood on the victim and the furnishings in her apartment. It was also stressed that appellant's clothes had bloodstains on them at the time of his arrest. It was thus crucial for the defense to dispel any notion that the victim was the source of this blood. We are also in agreement with appellant that under these circumstances a bare stipulation is not a genuine substitute for the live testimony of a witness who is prepared to give pivotal testimony. In sum, we cannot say that no prejudice resulted from the trial court's ruling. We also perceive no lack of diligence on the part of appellant, and the delay requested was only for a short period of time. We thus conclude that the trial court abused its discretion by refusing appellant's request for a brief recess.

We are not unmindful of the State's contention that appellant failed to meet the statutory requirement of filing an affidavit showing what facts the affiant believes the witness will prove and that the affiant believes these facts to be true. The supreme court has consistently interpreted Ark. Code Ann. § 16-63-402(a) (1987) as mandating an affidavit to justify a continuance due to a missing witness when the State objects to the continuance. *Wilson v. State, supra.* Here, however, the State did not object to a continuance; therefore, appellant's failure to submit an affidavit is not fatal to his argument.

We need also mention appellant's argument that the trial court's ruling denied him the right to call witnesses as guaranteed by the Sixth Amendment. Since we have found error in the trial court's decision on other grounds, we do not consider the merits of appellant's constitutional argument. *Foreman v. State*, 321 Ark. 167, 901 S.W.2d 802 (1995).

Reversed and remanded.

Pittman and Crabtree, JJ., agree.