Darrell Patrick FOUSE *v.* STATE of Arkansas

CA CR 00-477                                      43 S.W.3d 158

Court of Appeals of Arkansas
Division I
Opinion delivered March 14, 2001

*Hampton, Larkowski & Benca,* by: *David Sachar,* for appellant.

*Mark Pryor,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

OLLY NEAL, judge. Appellant, Darrell Patrick Fouse, was charged with manufacturing a controlled substance (methamphetamine), possession of a controlled substance with intent to deliver, possession of drug paraphernalia, simultaneous possession of drugs and firearms, and felon in possession of a firearm. The trial court denied appellant's pretrial motion to suppress evidence. Pursuant to Ark. R. Crim. P. 24.3(b), appellant entered a conditional guilty plea to the charges of manufacturing a controlled substance, possession of drug paraphernalia, and possession of a controlled substance with the intent to deliver. In this appeal, appellant argues that the trial court erred in denying his motion to suppress because the search warrant did not establish probable cause and the good-faith exception to the warrant requirement does not apply, or, alternatively, because the no-knock authorization was not properly supported by the police officer's affidavit.

On December 31, 1998, Michael Steele, chief investigator for the Sixteenth Judicial District Drug Task Force, swore out an affidavit for a search warrant. The affidavit listed several facts, which we now set forth in abbreviated form:

> 1) On September 19, 1998, an informant reported to Deputy Angie McGee of the Jackson County Sheriff's Office that a clandestine methamphetamine lab was operating at the Ron Tyler residence. Deputy McGee has smelled the odor of ether, a solvent

commonly used in manufacturing methamphetamine at the residence, and she has received reports from other sources that a methamphetamine lab and a chop shop are operating from the residence.

2) In a September 28, 1998 statement, Deputy Dickie Morris of the Jackson County Sheriff's Office indicated that a reliable confidential informant reported smelling ether emanating from the Tyler residence on several occasions. Deputy Morris also stated that other sources have told him that a chop shop operates out at the Tyler residence.

3) Deputy Marvin Vanoven of the Jackson County Sheriff's Office has reported receiving several reports that someone at the Tyler residence is making methamphetamine. Deputy Vanoven has smelled the odor of ether at the Tyler residence, and a reliable confidential source has told him that both a clandestine methamphetamine lab and a chop shop are operating at the Tyler residence.

4) A concerned citizen reported visiting the residence and encountering an armed individual seated on a four wheeler at the entrance to the property. The citizen also reported that a locked gate blocks the entrance. Agents of Drug Task Force have received other reports that armed guards patrol the area surrounding the Ron Tyler residence. On October 26, 1998, agents of the force traveled to the residence and observed someone driving a four wheeler around the woods to the west of the residence. The agents also observed lights pointing away from the residence indicating the residents attempt to observe individuals approaching the house. Additionally, agents have observed a motion sensitive light at the gated entrance to the residence.

5) Aerial photographs reveal that several vehicles have been stored on the property. The vehicles first appeared on the property within the last year.

6) Investigator Steele conducted a tactical open field surveillance at the residence on November 3, 1998. During this surveillance, Steele observed individuals using an infrared light source. Based on the experience he gained from four years in the United Stated Army, Agent Steele, believed that the individuals using the infrared light source were attempting to conduct counter surveillance.

7) On December 30, 1998, Steele and other agents conducted a second tactical open field surveillance in which they observed a small shed to the south of the Tyler residence. At the shed the officers noticed the strong odor of ether. The officers approached the shed and through an open door were able to observe a "military type ammo can" from which the ether odor seemed to originate. Steele stated that in his experience he has known those types of containers to conceal the components of clandestine methamphetamine labs. The agents also observed a vehicle circling around the field adjacent to the residence in a fashion indicating that the driver was conducting counter surveillance and heard noises coming from the residence that sounded like heavy items being moved or loaded.

On the basis of Steele's affidavit the municipal judge issued a search warrant for Ron Tyler's residence. The warrant allowed for a night-time search because the place to be searched is difficult for speedy access. The warrant also permitted a no-knock entry because of reports of weapons at the premises and reports of active counter-surveillance.

*I.*

The State first contends that we should affirm the trial court without reaching the merits of appellant's arguments because appellant failed to establish that he has standing to challenge the search. We disagree.

Rights secured by the Fourth Amendment are personal in nature, and may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128 (1978). A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property. *Id.; Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Ramage v. State*, 61 Ark. App. 174, 966 S.W.2d 267 (1998); *Rankin, supra*. The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Rankin, supra*.

It is well settled that the defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated. *Ramage, supra; Rankin,*

*supra.* One is not entitled to automatic standing simply because he is present in the area or on the premises searched or because an element of the offense with which he is charged is possession of the thing discovered in the search. *Ramage, supra.* We will not reach the constitutionality of the search where the defendant has failed to show that he had a reasonable expectation of privacy in the object of the search. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996).

The State concedes that it did not question appellant's standing to challenge the search before the trial court. The State also correctly notes that this court has ruled that standing can be raised for the first time on appeal and that this court may affirm the result reached by the trial court even though the reason given by the trial court may have been wrong. *See Richard v. State*, 64 Ark. App. 177, 983 S.W.2d 438 (1998). Appellant responds that in the instant case the State has waived its standing argument because in documents filed with and statements made to the trial court the State made affirmative statements indicating its belief that appellant lived at the residence. Appellant supports this argument by noting that the affidavit for probable cause to arrest appellant signed by the prosecutor, the deputy prosecutor, and the judge who eventually ruled on the motion to suppress stated that a search warrant was executed at the residence of Darrell Patrick Fouse. Appellant also quotes a statement from the prosecutor to the trial court in which the prosecutor affirmatively declares that the "search warrant was executed at the residence of Darrell Patrick Fouse."

During oral argument before this court, the State contended that even when the State implies to the trial court that the proponent of a motion to suppress has standing to challenge the search, the movant maintains the burden of establishing standing and if he fails to meet that burden, the State can raise standing for the first time on appeal. The State cites our decision in *Richard, supra*, as support for its argument. The instant case, however, is easily distinguishable from *Richard*. In *Richard*, not only did the accused fail to establish standing, but the record was absolutely devoid of indication of the accused's interest in the residence. Here, however, the record shows that appellant asserted that the search was of his residence, and the State, in both pleadings and oral declarations to the trial court, made affirmative statements indicating appellant lived at the searched residence. This distinction is supported by the United States Supreme Courts holding in *Stegald v. United States*, 451 U.S. 204 (1981). In *Stegald*, the Court held that the Government is precluded from raising standing for the first time at the Supreme Court when the Government failed to make that

argument in the courts below but rather had sought to connect the accused with the residence, had acquiesced in statements by the courts below characterizing the search as one of the accused's residence, and had made similar assertions of its own. Thus, while we have previously held that the State may raise a party's standing to challenge a warrant for the first time on appeal when the record is devoid of any evidence establishing the accused's interest in the place searched, the State, in this case, waived its right to challenge appellant's assertion that he had a legitimate expectation of privacy in the residence by making affirmative declarations to the trial court implying that appellant lived at the residence and had standing to challenge the search of the residence.

Before we turn to the merits of appellant's claim, we address appellant's motion requesting attorney's fees and costs that he incurred when his attorney was forced to prepare a substituted abstract in response to the State's argument that he had not established standing in the trial court. Appellant states that because the State conceded standing at the trial level and because the trial court acknowledged standing, he did not abstract the portion of the record relevant to standing in his opening brief. He argues that when the State decided to raise standing for the first time on appeal, the State maintained the responsibility of abstracting the relevant portions of the record. Appellant contends that because he took on the onus of supplementing his original abstract and submitting a substituted abstract including materials relevant to standing when the State raised the issue for the first time on appeal, the State should be responsible for his costs associated with preparing the substituted abstract.

Rule 4-2(a)(6) of the Arkansas Rules of the Supreme Court requires an appellant to abstract the record, without comment or emphasis, and include only those parts that are vital to an understanding of the issue(s) presented to the court. Ark. Sup. Ct. R. 4-2(a)(6). An appellee who considers the brief provided by appellant as insufficient may call this matter to the appellate court's attention and include a supplemental abstract. *Id.* at (b)(1). When the case is considered on the merits, this court may impose costs to compensate either party for the other party's noncompliance. *Id.*

Appellant has cited no authority for the awarding of attorney's fees against the State, and we know of none. We do not consider arguments not supported by convincing authority. *Johnston v. Curtis*, 70 Ark. App. 195, 16 S.W.3d 283 (2000).

Though we award no attorney's fees, we are nonetheless disturbed by the State's response to appellant's motion. In its response, the State argues:

> Whether standing is conceded or not, the appellant's abstract must demonstrate that he had it. Thus, his counsel is simply wrong that the State should have supplementally abstracted any parts of the record relevant to standing. *To do so would have cured the apparent defect in the appellant's initial abstract, thereby preventing the State from making a standing argument at all.* (Emphasis supplied.)

What is dismaying about this statement is that it appears to be an outright admission that, in this case at least, the State is more concerned with obtaining a victory rather than justice. As citizens, we understand the State's desire to see to it that those who choose to violate the law are punished accordingly. We cannot, however, condone the use of this court's procedural rules that are designed to ensure the efficient operation of justice as shields from justice.

## II.

When reviewing a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances; we view the evidence in the light most favorable to the appellee and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146 (1999). We apply the totality-of-the-circumstances test in determining whether the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Id.*

Appellant's first contention regarding the warrant is that the affidavit failed to set forth particular facts bearing on the informants' reliability. Appellant notes that throughout the affidavit, Investigator Steele repeatedly states that a confidential informant told other officers about activities, including the production of methamphetamine, the operation of an illegal chop shop, and the use of armed surveillance, occurring at the residence. These informants are never identified and, save the occasional reference to a "reliable confidential source," there is no indicia of their reliability.

Arkansas Rule of Criminal Procedure 13.1(b) provides in pertinent part:

> If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. . . . Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

A search warrant is flawed if there is no indicia of the reliability of the confidential informant. *Henry v. State*, 29 Ark. App. 5, 775 S.W.2d 911 (1989). Furthermore, the conclusory statement, "reliable informant" is not sufficient to satisfy the indicia requirement. *Jackson v. State*, 291 Ark. 98, 722 S.W.2d 831 (1987). If, however, the affidavit when viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure may be found in a particular location, the failure to establish the veracity of the informant is not fatal. *Hayne v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993).

In the instant case the statements of the confidential informants reported in the affidavit, alone, fail to establish probable cause. "There is however no rule, statute, or other procedure which prevents officers from following through and investigating any information received by them whether by confidential informant or otherwise." *Toland v. State*, 285 Ark. 415, 417, 688 S.W.2d 718, 720 (1985). Moreover, a presumption exists that public officials are credible. *French v. State*, 256 Ark. 298, 506 S.W.2d 820 (1974).

In this case, a number of sheriff's deputies and task force agents confirmed the smell of ether originating from the residence after receiving reports that a methamphetamine lab was located at the residence. Additionally, members of the drug task force personally observed the counter-surveillance measures being employed at the residence and aerial surveillance corroborated the presence of a large collection of automobiles. Finally, on the evening before applying for the warrant, members of the Drug Task Force entered property near the residence and could smell ether and hear the movement of large items. These personal observations of members of the Sheriff's office and the Drug Task Force provide confirmation of the information supplied by the confidential informants.

Appellant also urges that the warrant violates prohibitions against unreasonable searches and seizures because the affidavit failed to state when the criminal activity it asserts as a basis for the search occurred. In support of this contention, appellant cites *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985), and *Ulrich v. State*, 19 Ark. App. 62, 716 S.W.2d 777 (1986). In both of those cases, the courts held that search warrants that failed to mention the time in which the observations occurred or failed to establish a basis upon which a time frame could be inferred were defective.

Appellant's argument that the affidavit in the present case does not provide a time frame is mistaken. Although most of the dates provided in the affidavit reference the date the officer received a report and not when the activity was observed, these references are sufficient to establish a time frame during which the activities occurred. The dates provided in the affidavit reveal that officers received reports beginning in September 1998, and that they investigated until December 1998. Moreover, on October 26, 1998, agents observed a four wheeler traveling around the wooded area to the west of the residence and the lights pointed away from the residence as if to observe individuals approaching the residence and on November 3, 1998, and December 30, 1998, Investigator Steele and others entered property surrounding the residence. On those dates the agents observed individuals using infrared lighting devices commonly used in association with night-vision goggles and smelled ether respectively. Finally, Sergeant Morris's September 28, 1998, statement indicates that an informant had told him of the smell of ether originating from the residence on several occasions within the preceding ninety days. From the affidavit, it can be inferred that the reported activities occurred between June 1998 and December 1998.

Appellant also argues that the surveillance performed by the officers on November 3, 1998, and on December 30, 1998, amount to unlawful searches. Specifically, appellant contends that these searches fell within the curtilage of the residence. We do not reach appellant's argument because he did not receive a specific ruling on whether the area falls within the curtilage of the residence. In order to preserve a point for appellate review, a party must obtain a ruling from the trial court. *Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998); *Jordan v. State*, 323 Ark. 628,632, 917 S.W.2d 164, 166 (1996). We will not review a matter on which the trial court has not ruled; and, a ruling should not be presumed. The burden of obtaining a ruling is on the movant; matters left unresolved are waived and may not be raised on appeal. *Id.*

Applying a totality-of-the-circumstances test, we cannot conclude that the trial court was clearly erroneous in denying appellant's motion to suppress the evidence. The search warrant was based upon numerous reports that a methamphetamine lab and chop shop were operating out of appellant's residence. These reports were confirmed by aerial photographs showing a recent collection of vehicles on the property, observations of security measures employed at the residence, and the detection of the strong odor of ether emanating from the residence. Citing *Fouse v. State, supra,* appellant argues that the smell of ether alone is not sufficient to establish probable cause. In *Fouse,* the supreme court noted that the smell of ether is insufficient probable cause to justify a *nighttime search.* The court made no pronouncement as to whether the smell is sufficient to justify a daytime search.

In the present case, however, the smell of ether, alone is not the only evidence offered to establish probable cause. Also offered were numerous reports of methamphetamine production, a chop-shop operation, and activities indicative of counter surveillance measures. In light this other information, we conclude that the trial court did not clearly err in denying appellant's motion to suppress. Because we conclude that the trial court did not err in denying appellant's motion to suppress, we do not need to address his argument that the good faith exception to the warrant requirement does not apply in this case.

### III.

Appellant's final point on appeal is that the no-knock authorization contained in the warrant was not supported by a reasonable suspicion. Appellant contends that the authorization was based solely on generalizations in the affidavit about officer safety. Appellant has not presented any evidence showing that the warrant was executed using the no-knock clause. Thus, there was no showing that appellant was prejudiced by the no-knock entry provision. The law is well settled that prejudice is not presumed, and we will not reverse absent a showing of prejudice. *Camp v. State,* 66 Ark. App. 134, 991 S.W.2d 611 (1999).

Affirmed.

STROUD, C.J., and JENNINGS, J., agree.