Clifford Joe PULLAN  *v.*  STATE of Arkansas

CA CR 08-67                                289 S.W.3d 180

Court of Appeals of Arkansas
Opinion delivered November 19, 2008

*Barry D. Neal,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Valerie Glover Fortner,* Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A Crawford County jury convicted Clifford Joe Pullan of possession of marijuana, possession of marijuana with intent to deliver, possession of drug paraphernalia, and felon in possession of a firearm. The consecutive sentences he received for these crimes totaled seventy years in the Arkansas Department of Correction. On appeal he argues that the trial court erred in denying his motion to suppress evidence seized during his warrantless arrest and search incident to arrest because the search was unreasonable under the Fourth Amendment of the United States Constitution, article 2, section 15 of the Arkansas Constitution, and Rules 3.1, 4.1, and 12.1 of the Arkansas Rules of Criminal Procedure. Pullan also argues that without the evidence that he sought to suppress, there would be insufficient evidence to support the verdict. We affirm.

Most of the legally significant facts are not in dispute. On January 28, 2006, Pullan was arrested for delivery of marijuana. The arrest was the culmination of an operation conducted by the Twenty-first Judicial District Drug Task Force undertaken to determine whether Pullan was the supplier for a lower-level drug dealer, John Nick. Prior to the start of the operation, a confidential informant (CI) who had made three marijuana purchases from Nick told the drug task force that Nick claimed that Pullan was his supplier. In December 2005, the task force had arrested Pullan for drug trafficking the previous summer. This alleged activity was not connected to his suspected involvement with Nick.

On the day in question, the drug task force set up surveillance on Pullan's residence. Drug task force investigator Lanny Reese and Crawford County Sheriff's Department narcotics officer Shawn Firestine then sent the CI to Nick's residence to purchase marijuana with marked currency. The CI had been given approximately $2,000 so that he could buy all of Nick's existing stock of marijuana. Nick sold him eight ounces of marijuana for $640. While the CI was present in Nick's home, the drug task force heard Nick's wife, Kim Mereshka, call an unnamed person and ask "Can you bring me something?" Reese identified this request, based on his experience, as a "dope deal." Immediately after the telephone call, Pullan left his residence carrying a pack-

age. Pullan drove directly to Nick's residence, and he entered without knocking. Pullan only stayed inside a few minutes before leaving without the package. The drug task force intended to follow Pullan back to his home. However, when Pullan took a different route, going instead to his daughter's house, Reese decided to stop and arrest Pullan.

Upon making contact with Pullan, both Reese and Firestine noticed a large wad of bills in Pullan's shirt pocket. They seized the cash, and it proved to be most of the "buy money." A search of Pullan's vehicle failed to uncover any marijuana, and an ion test found only trace amounts of the drug around Pullan's shirt pocket. The drug task force then obtained a warrant and searched Pullan's residence where they discovered marijuana and additional marked "buy money" in a safe. The drug task force also obtained and executed a search warrant for Nick's residence where the approximately two pounds of marijuana that was allegedly delivered by Pullan was discovered.

Pullan moved to suppress the evidence seized in his warrantless arrest and in the subsequent execution of the search warrant for his home. After a hearing, the motion was denied. The case proceeded to a jury trial where the evidence, along with testimony from Nick and Mereshka, as well as the arresting officers, was presented. Nick and Mereshka testified that they obtained the marijuana from Pullan, who was their regular supplier. Pullan timely appealed from the jury verdict.

We are obligated to first address Pullan's sufficiency of the evidence argument because of double-jeopardy considerations.[1] *See Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). He argues that save for the testimony of Nick and Mereshka, who he asserts have "obvious credibility problems," the $620 in buy money seized from his person, and the marijuana and buy money seized from his safe, there is no evidence to connect him with the two pounds of marijuana that he allegedly delivered. We find this argument unpersuasive.

---

[1] Although Pullan was convicted of four charges, possession of marijuana, possession of marijuana with intent to deliver, possession of drug paraphernalia, and felon in possession of a firearm, he only made a specific directed-verdict motion that addressed the possession with intent to deliver charge. Accordingly, we may only consider the sufficiency of the evidence argument as it relates to that conviction.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stewart v. State*, 88 Ark. App. 110, 112, 195 S.W.3d 385, 386 (2004). We do not re-weigh the evidence but determine instead whether the evidence supporting the verdict is substantial. *Id.* Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion without having to resort to speculation or conjecture. *Id.* We do not, however, weigh the credibility of the witnesses. *Id.* When we review sufficiency-of-the-evidence challenges, we consider evidence both properly and improperly admitted. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998).

Under our standard of review, we cannot address whether or not Nick and Mereshka were credible; that determination is reserved for the jury. *Id.* Inasmuch as they both testified that Pullan delivered the marijuana, giving that testimony its highest probative value, as we must, we hold that there is substantial evidence to support the jury verdict. Furthermore, evidence concerning the time line of Pullan's movements obtained by the drug task force during its operation, although circumstantial, substantiated the testimony of Nick and Mereshka.

We therefore turn to Pullan's suppression arguments. In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Sheridan v. State*, 368 Ark. 510, 247 S.W.3d 481 (2007).

In support of his argument that the trial court erred in denying his motion to suppress evidence seized during his warrantless arrest and search incident to arrest, Pullan first contends that law enforcement did not have reasonable cause for his warrantless arrest. He acknowledges that under Rule 4.1 of the Arkansas Rules of Criminal Procedure, a police officer may arrest a person without a warrant if the officer has reasonable or probable cause to believe that the person committed a felony. However, he asserts that the State lacked probable cause because there was no "direct evidence" that he had committed a criminal offense because he was not present at any of the controlled buys at Nick's residence, the police could not determine the content of the package he was carrying and did not "personally observe" or otherwise monitor the alleged delivery to Nick in exchange for the

buy money. Further, he contends that the police did not conduct a controlled buy at his residence, he did not have any marijuana on his person or in his vehicle at the time of the arrest, and the police surveillance did not sufficiently corroborate the informant's tip. Regarding the latter point, he further states that there was not a sufficient basis for establishing that the informant's information was reliable because the CI's report that Pullan was Nick's supplier was based solely on Nick's unsubstantiated hearsay statement. Citing *Roderick v. State*, 288 Ark. 360, 705 S.W.2d 433 (1986), he contends that the police only had a suspicion that he had engaged in criminal conduct, which was insufficient to establish probable cause. We disagree.

At the time the drug task force initiated its operation, it knew from its prior arrest of Pullan that he had been involved with delivering marijuana. In subsequent controlled buys from John Nick, the CI was told by Nick that Pullan was his supplier. While the identification of Pullan as his supplier was unsubstantiated hearsay, the operation mounted by the drug task force provided corroboration. As we noted earlier, on January 28, 2006, the drug task force placed Pullan's house under surveillance. It then conducted a controlled buy that prompted Nick to seek resupply of his stock of marijuana. The drug task force heard a telephone conversation that, based on Investigator Reese's training and experience, was identified as a request to purchase drugs. Immediately after that request, Pullan left his house carrying a package. He drove directly to Nick's house and went inside without knocking. Approximately five minutes later, Pullan left Nick's house without the package.

In our view, these facts would cause a person of reasonable caution to believe that delivery of marijuana had taken place. In essence, this was a call by a known drug dealer requesting a delivery of narcotics from a supplier, immediate movement by a known drug supplier who was the suspected supplier, direct travel by that suspected supplier to the source of the resupply request, and the apparent delivery of a package. While this proof may not have risen to the quantum of proof required to convict Pullan, we nonetheless conclude that there was probable cause sufficient to make the arrest; it is axiomatic that probable case relating to whether a crime was committed requires a lesser degree of proof than does a conviction for committing the offense. *See Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994).

■ Pullan next argues because the warrantless arrest was made without probable cause, the search incident to arrest was invalid. He argues that the police had, at best, reasonable suspicion, which would only have supported an investigatory stop pursuant to Rule 3.1 of the Arkansas Rules of Criminal Procedure. Likewise he argues that the affidavit for the search warrant for his residence was deficient because it is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." We reject these arguments. For the reasons stated previously, we held that there was probable cause to arrest. Accordingly, the search incident to arrest is valid. Ark. R. Crim. P. 12.1.

■ Regarding the affidavit that was submitted in support of the application for a search warrant, we will uphold its validity if it, when viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure may be found. *Fouse v. State*, 73 Ark. App. 134, 43 S.W.3d 158 (2001). Here, the affidavit recited the same facts that we determined were sufficient to constitute probable cause for the warrantless arrest. Moreover, the affidavit also recited that $620 of buy money, which was given to John Nick by the CI approximately fifteen minutes earlier, was seized during the arrest. The affidavit also stated that when Nick's residence was searched, the police found approximately two pounds of marijuana. Additionally, it recited that the police recorded statements made by Nick to the CI that Pullan was Nick's supplier. While these statements, standing alone, would not have had a sufficient indicia of reliability for us to uphold the search warrant, the subsequent observations made by the police of Pullan's movements, apparently in response to Nick's request to make a drug deal provided sufficient corroboration. In this way, we believe this case is analogous to *Fouse*. In *Fouse*, an informant told police that the appellant was manufacturing methamphetamine. 73 Ark. App. at 142-43, 43 S.W.3d at 164-65. Police followed up this information, and through investigation and surveillance, they detected the strong smell of ether originating from the residence and the presence of an unusually large number of automobiles. *Id*. We held that these observations provided sufficient corroboration of the informant's tip. *Id*. Likewise, in the instant case, we have the recorded statements by Nick to the CI, and corroboration based on police work in the form of the drug task force's operation. Accordingly, we affirm on this point as well.

Affirmed.

PITTMAN, C.J., and GRIFFEN, J., agree.