The STATE of Ohio, Appellee,

v.

CORBIN, Appellant.

[Cite as *State v. Corbin*, 194 Ohio App.3d 720, 2011-Ohio-3491.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–10–013.

Decided July 15, 2011.

Paul A. Dobson, Wood County Prosecuting Attorney, and Gwen Howe–Gebers, Assistant Prosecuting Attorney, for appellee.

Lawrence J. Daly, for appellant.

SINGER, Judge.

{¶ 1} Appellant, Randy Corbin, appeals from a decision of the Wood County Court of Common Pleas denying his motion to suppress evidence. For the reasons that follow, we affirm the trial court's ruling.

{¶ 2} On November 8, 2007, appellant was indicted on one count of murder and one count of tampering with evidence. On September 5, 2008, appellant filed a motion to suppress evidence, asserting lack of probable cause for the search and seizure of his girlfriend's residence, his personal property, and his own person. A suppression hearing was conducted on September 15, 2008, and the trial court denied appellant's motion.

{¶ 3} Appellant's trial commenced on March 2, 2010, and concluded on March 5, 2010, when the jury returned a verdict of guilty on one count of murder and one count of tampering with evidence. The same day, the trial court sentenced appellant to a term of 15 years to life for the murder conviction, a violation of R.C. 2903.02(A), and sentenced him to five years, to be served consecutively, for the conviction of tampering with evidence, a violation of R.C. 2921.12.

{¶ 4} Appellant now appeals the decision of the trial court, setting forth the following assignments of error:

{¶ 5} "I. The trial court committed prejudicial error when it overruled appellant Randy Corbin's motion to suppress evidence obtained as the result of an unreasonable warrantless entry into and search of his premises in the absence of not only probable cause but also of authorized consent or permission, as required

by the Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution.

{¶ 6} "II. The trial court committed prejudicial error when it overruled appellant Randy Corbin's motion to suppress evidence obtained as the result of a subsequent inspection of his premises pursuant to a warrant issued in violation of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.

{¶ 7} "III. The trial court committed prejudicial error when it overruled appellant Randy Corbin's motion to suppress evidence obtained as the result of a warrantless seizure of his personal property in violation of the of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution.

{¶ 8} "IV. The trial court committed prejudicial error when it overruled appellant Randy Corbin's motion to suppress evidence obtained as the result of searches of his personal property and person pursuant to warrants issued in violation of the of the of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution."

{¶ 9} The following facts are relevant to the four assignments of error raised on this appeal. Damon Hudson, an officer of the North Baltimore police department, and John Helm, an investigator for the Wood County prosecutor's office, both testified at the suppression hearing. A summary of their testimony is below.

{¶ 10} On October 15, 2007, Karen Coldwell phoned police to report that her car was stolen by appellant, her boyfriend. The following day, on October 16, 2007, Officer Damon Hudson received a call regarding a possible missing-person report and responded to 409 West State Street. Hudson testified that upon arrival he was met outside the residence by Misty Mason, the adult daughter of Coldwell. Mason told the officer that her mother had been missing for almost 24 hours and that this was unlike her mother. Mason also expressed concerns that on the night of October 15, 2007, she had overheard her mother fighting and arguing with appellant.

{¶ 11} During the initial visit, Hudson was aware that 409 West State Street was the residence of Coldwell because he had been called to the residence a number of times because of "instances" between Coldwell and appellant.

{¶ 12} Hudson entered Coldwell's home following an invitation from Mason. Once inside Coldwell's home, Mason pointed out personal effects that included Coldwell's contact lenses, work identification, cell phone, and purse. Mason told Hudson that her mother would never leave her home without them. Mason also indicated that a beer can on the dining room table belonged to appellant, based

on her observation that the tab on the beer was turned to the right. Also in plain view were the words "love hurts," which were written on a living room table with what looked to be soap.

{¶ 13} At some point, Coldwell's other adult daughter, Jessica Reed, arrived. Both Mason and Reed told Hudson that they had spoken to appellant and believed that appellant was at Nathan Roe's house. Hudson then called the sheriff's office to see if they could find the reported stolen vehicle near Roe's address. After roughly one hour at Coldwell's home, Hudson returned to the police department to fill out a missing-person report.

{¶ 14} Later that day, Hudson returned a second time to 409 West State Street. Upon arrival, Hudson noticed Coldwell's car parked in the driveway. The daughters told Hudson that they had discovered their mother's car near Roe's home and drove it back. To further support their concern, the daughters pointed out Coldwell's glasses and keys, which were left in the car.

{¶ 15} The daughters again invited Hudson into Coldwell's house. Once inside, Hudson listened to a conversation between Mason and appellant on a speaker-phone. Appellant asserted that Coldwell was at Miss Cue, a sports bar, and refused to help with the efforts to locate Coldwell. Hudson testified that this conversation, along with previous findings, created a mounting suspicion that Coldwell may have been a victim of foul play.

{¶ 16} Hudson and the daughters walked through the house a second time looking for anything that would indicate the whereabouts of Coldwell. Among items retrieved were the glass top with "love hurts" written on it, a pack of cigarettes, a beer can, a lighter, and a towel with a red-brown substance on it that appeared to be blood. All items were in plain sight and identified during the first visit except for the towel, which was found in the bathroom during the second walkthrough by Hudson.

{¶ 17} Investigator John Helm testified that he first arrived at 409 West State Street on October 17, 2007, to assist the police department in a missing-person case. Based on conversations with Coldwell's daughters and friends and police, Helm obtained a search warrant for 409 West State Street. The purpose of the warrant was to search for "any evidence tending to explain the whereabouts of Karen Coldwell or any harm that may have come to her."

{¶ 18} Helm testified that he believed he had a valid search warrant when these following items were retrieved from Coldwell's residence: a pillowcase, shaver, toothbrush, and hairbrush. The pillowcase tested positive for blood and the other items were taken to establish a DNA standard for the victim.

{¶ 19} Helm learned through a conversation with Roe that on October 15, 2007, appellant stayed overnight at Roe's home. Roe also informed Helm that appel-

lant was no longer staying with him and that appellant had left a garbage bag containing recently washed clothes in the back of Roe's pickup truck. The bag was left open and Helm testified that he could see some clothing and deodorant through the top of the bag.

{¶ 20} Coldwell's body was found on October 18, 2007. Subsequently, a second search warrant to search the contents of the bag was issued on October 29, 2007.

{¶ 21} A third search warrant was issued to attain two buccal swabs from appellant while he was at the Wood County jail for the purpose of DNA comparison to previously collected evidence.

{¶ 22} An appellate court's review of a suppression hearing presents a mixture of questions of fact and law. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. When resolving matters involving factual questions, an appellate court must uphold the decision of the trial judge if the findings are supported by competent, credible evidence. Id. In contrast, when reviewing matters involving a legal conclusion, the appropriate standard of review is de novo, and the appellate court should give no deference to the decisions of the trial court and instead independently determine whether the applicable legal standards are met. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *United States v. Watkins* (C.A.6, 1999), 179 F.3d 489, 494.

{¶ 23} In his first assignment of error, appellant argues that the court should have suppressed evidence gathered by Hudson during the two warrantless walkthroughs of 409 West State Street. Appellant alleges that Hudson failed to obtain consent to search the residence and that there was no emergency or exigency that justified the warrantless entries.

{¶ 24} The Fourth Amendment protects individuals from unreasonable search and seizure by the government. However, in order to have standing to challenge a violation, an individual must have a legitimate expectation of privacy in the subject matter of the search. *Minnesota v. Olson* (1990), 495 U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85; *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387. A legitimate expectation of privacy is "one that society is prepared to recognize as reasonable." *Rakas v. Illinois* at 143–144. The burden is on the party asserting the motion to provide sufficient evidence to prove grounds for standing. Id.

{¶ 25} In *Olson*, the Supreme Court held that that an individual's status as an overnight guest is alone enough to establish a reasonable expectation of privacy. *Olson*, 495 U.S. at 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85. However, the ruling in *Olson* is limited in that it does not apply to prior overnight guests, regardless of the level of frequency, who failed to present sufficient evidence to show that they

were an overnight guest at the time of the search. *State v. Davis* (1992), 80 Ohio App.3d 277, 285, 609 N.E.2d 174.

{¶ 26} When at the time of the search an individual is not an overnight guest, courts look at the totality of the circumstances in making a determination. *State v. Messenger*, 3d Dist. No. 9–09–19, 2010-Ohio-479, 2010 WL 530087, ¶ 16. In *Messenger*, the court determined that appellant did not meet the status of an overnight guest despite evidence showing that he had been staying at the residence for over a year, had no restrictions as a guest, had free use of household items, and had left several personal items throughout the house because appellant was staying somewhere else at the time of the search. Id. at ¶ 15–16. In *Hill v. United States* (App.D.C.1995), 664 A.2d 347, the court found that the defendant, despite sometimes being an overnight guest, did not have a reasonable expectation of privacy, because there was no evidence that he was planning on spending that particular night at the apartment. Similarly the court in *Alston v. Maryland* (2004), 159 Md.App. 253, 858 A.2d 1100, 1107–1109, found that an appellant who was an on-and-off overnight guest had no expectation of privacy when he failed to provide additional evidence connecting him to the premises, such as whether he planned to stay as an overnight guest on the night of the search, whether he had the right to invite others into the premise, whether he had a key to the home, whether he had personal effects left at the premises, and whether he received mail at the premises. In *Rankin v. State* (1997), 57 Ark. App. 125, 942 S.W.2d 867, 870–871, the court held that even though the defendant frequently stayed at his girlfriend's home as an overnight guest and had left prescription bottles at the home, he did not have a reasonable expectation of privacy because he was not an overnight guest on the day of the search.

{¶ 27} Returning to the case at hand, the trial court properly denied appellant's motion to suppress evidence from the two warrantless entries of 409 West State Street because there was no evidence that appellant had a legitimate expectation of privacy in Coldwell's residence. In the suppression hearing, no evidence was provided that would lead a trial judge to rule that appellant ever held a status higher than that of an overnight guest. Although appellant occasionally stayed at Coldwell's home, like the defendants in *Hill*, *Messenger*, *Alston*, and *Rankin*, there was no evidence to support a finding that appellant intended to stay as an overnight guest on the day of search. To the contrary, appellant not only stayed at Roe's home on the night of October 15, but also failed to make any attempts to return to the State Street residence on October 16, the day of the two warrantless searches, or at any point following the search. According to Detective Helm's testimony, "in the time period from the 15th to the 18th, he [appellant] had changed residences two times. He had been living in the address in North Baltimore. By the 16th he had stayed at Roe's overnight, and the 18th he was

staying in a trailer in Fostoria." Also, there was no evidence showing that appellant helped pay the mortgage or utility bills or stored personal affects at Coldwell's home. Further support for the termination of appellant's overnight-guest status can be gathered from the fact that on October 15 Coldwell reported to the police department that her car may have been stolen by appellant. Therefore a review of the totality of the circumstances provides ample evidence in support of the trial court's finding.

{¶ 28} Even if this court were to determine that the trial court erred in finding that appellant had no expectation of privacy in the State Street home, the warrantless search would still be valid due to third-party consent. In *Illinois v. Rodriguez* (1990), 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148, the court found that a third party who possesses common authority may consent to a search of the premises. A person with sufficient relationship over the premises may also give consent to a search. *State v. Sneed* (1992), 63 Ohio St.3d 3, 7, 584 N.E.2d 1160; *United States v. Matlock* (1974), 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242. It is not necessary that the consenting third party have actual authority over the premises. *United States v. Ayoub* (C.A.6, 2007), 498 F.3d 532, 537. Even if the belief is erroneous, using an objective standard, third-party consent is valid if the officer looking at the then available facts could reasonably conclude that the third party had apparent authority to consent. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 186–189, 110 S.Ct. 2793, 111 L.Ed.2d 148; *Ayoub* at 537. An officer's belief is not reasonable if the surrounding circumstances would lead a reasonable person to doubt the authority of the third party. Id.

{¶ 29} In *United States v. Hilliard* (C.A.8, 2007), 490 F.3d 635, the court found that the officer's belief that a third party had apparent authority to consent to a search was reasonable, because the third party answered the door and invited officers into the home and was familiar with the location of items within the premises.

{¶ 30} Here the trial judge found as a matter of fact that Hudson reasonably believed that Mason and Reed had a sufficient relationship over the premises to consent to the search. Hudson knew that Mason and Reed were daughters who kept in close contact with their mother, appeared to have access to their mother's home, readily invited Hudson into their mother's home without any hesitation, and were familiar with the location of items throughout the house. Based on the record, there is sufficient credible evidence to support the decision of the trial judge.

{¶ 31} Because appellant had no reasonable expectation of privacy and Hudson's belief that the daughters had apparent authority was reasonable, we need not consider whether the requirements for exigent circumstances were met. Accordingly, appellant's first assignment of error is found not well taken.

{¶ 32} In his second assignment of error, appellant contends that the subsequent warrant issued for the search of 409 West State Street was unreasonable due to lack of probable cause. Appellant further asserts that the warrant fails to fall under the good-faith exception to the exclusionary rule.

{¶ 33} The totality of the circumstances is considered when determining whether a warrant affidavit supports the magistrate's conclusion that there was substantial basis to believe that probable cause existed for the issuance of the warrant. *Illinois v. Gates* (1983), 462 U.S. 213, 230–231, 103 S.Ct. 2317, 76 L.Ed.2d 527. The Ohio Supreme Court, in following the standard set forth in *Gates*, stated that when reviewing the sufficiency of an affidavit to support a finding of probable cause, an appellate court should give great deference to the trial court's decision. *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640; *Gates* at 213. Furthermore when the case is marginal, reviewing courts should uphold the validity of the warrant. *George* at 329–330.

{¶ 34} The evidence in the record provides sufficient support for the trial judge's finding that there was probable cause that the search of the premises would lead to information that would help locate or explain the disappearance of Coldwell. Coldwell was reported missing by her daughter who kept in close contact; Coldwell and appellant had a history of fighting that had even led Coldwell to contemplate suicide in the past; the words "love hurts" were written on the glass top table of Coldwell's home; Coldwell's car was reportedly stolen by appellant; and a towel with what looked to be blood stains was found on the premises. All these facts provide ample evidence sufficient to support a trial judge's finding that there was probable cause to issue a search warrant for the State Street residence.

{¶ 35} Even if this court were to determine that the search-warrant affidavit contained insufficient evidence to establish probable cause, the evidence obtained with the search warrant is still admissible pursuant to the good-faith exception to the exclusionary rule. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 254, 22 OBR 427, 490 N.E.2d 1236. In *Leon* the court articulated that absent an "allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon* at 926.

{¶ 36} The application of the *Leon* test to our facts supports the finding that the evidence collected under the first warrant is admissible under the good-faith exception. During the suppression hearing there was no evidence that Helm

purposely or recklessly misled the judge. No evidence was presented to show that the issuing judge abandoned his role as a neutral, competent judge when reviewing the affidavit. Also, Helm reasonably believed he had a valid warrant when he conducted the search of Coldwell's home. Therefore, the trial court's decision to deny appellant's motion to suppress evidence gathered as a result of the first issued warrant was proper. Appellant's second assignment of error is found not well taken.

{¶ 37} In his third assignment of error, appellant contends that the evidence obtained from the warrantless seizure of items left in a bag in the back of Roe's pickup truck should be suppressed. Appellant contends that the seizure was unreasonable since there was no evidence to conclude that the property was abandoned by appellant.

{¶ 38} Abandoned property is not afforded protection under the Fourth Amendment. *Abel v. United States* (1960), 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668. In *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176, the court stated that "abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts." In *State v. Gould*, 6th Dist. No. L–08–1383, 2010-Ohio-3437, 2010 WL 2891490, ¶ 28, this court stated that "all relevant circumstances existing at the time of the alleged abandonment should be considered" when determining whether a property was intended to be abandoned. Therefore it is important to determine whether the owner of the abandoned property voluntarily relinquished his interest in the property such that a reasonable expectation of privacy does not exist at the time of the search. Id.

{¶ 39} In *People v. Schmeck* (Cal.2005), 37 Cal.4th 240, 281, 33 Cal.Rptr.3d 397, 118 P.3d 451, the court found that the defendant had no reasonable expectation of privacy when he left a paper bag in the garage owned by an acquaintance because the acquaintance had free, unrestricted access to the bag. Further, the court found that when an individual leaves an unsecured bag with an acquaintance, that person assumes the risk that the acquaintance may search the contents of the bag or legally consent to the search of the bag. Id.

{¶ 40} The facts of our case are similar to those found in *Schmeck*. As in *Schmeck*, appellant left his personal property with Roe, an acquaintance, and placed it in plain view in a location that was readily accessible to Roe. Also, as in *Schmeck*, there was no expectation of privacy because the bag containing the clothes was not secured with a lock nor was Roe instructed to not look inside the bag. Furthermore, Roe stated to Helm that appellant was no longer staying at his home and that the bag was left by appellant in the back of Roe's truck. Roe did not provide any statements indicating that appellant intended to retrieve the

bag in the future. Looking at the totality of the circumstances, the fact that the bag contained clothes that were freshly laundered and left open on the back of a friend's pickup truck gives little weight to support a conclusion that appellant intended to return for the bag. In this case, the trial judge reasonably determined that appellant abandoned his bag at Roe's home and had no expectation of privacy for the contents of the bag. Accordingly, appellant's third assignment of error is found not well taken.

{¶ 41} In his fourth assignment of error, appellant contends that the warrant issued to search the contents of the bag found in Roe's truck and the warrant to compel a DNA sample from appellant were unreasonable because of lack of probable cause to issue the warrants. For the same reasons articulated in support of the trial judge's decision in the second assignment of error, this court finds that the trial judge did not abuse his discretion in determining that the second and third search warrants were supported by probable cause. Accordingly, appellant's fourth assignment of error is not well taken.

{¶ 42} On due consideration, the decision of the Wood County Court of Common Pleas is hereby affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

Osowik, P.J., and Pietrykowski, J., concur.