Brian EMBRY *v.* STATE of Arkansas

CA CR 99-1011                                    15 S.W.3d 367

Court of Appeals of Arkansas
Division I
Opinion delivered April 26, 2000
[Petition for rehearing denied May 31, 2000.]

*Dale W. Finley*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

K MAX KOONCE, II, Judge. Appellant entered a conditional plea of guilty to manufacturing a controlled substance pursuant to Arkansas Rule of Criminal Procedure 24.3. He was sentenced to fifteen years in the Arkansas Department of Correction. On appeal, appellant argues the trial court erred in denying his motion to suppress. We affirm.

■ When reviewing the trial court's denial of a motion to suppress, the appellate courts make an independent determination based on the totality of the circumstances and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997).

Officer Phillip Hubbard of the Atkins Police Department testified that on November 13, 1998, he responded to a call of a possible fire at around 10:00 p.m., and subsequently observed smoke coming from a small storage building or tool shed at the Atkins Housing Authority, a state-owned facility. Officer Hubbard witnessed appellant exit the storage building and close the door. Appellant told the officer he was fumigating the building. Officer Hubbard testified that he heard a voice inside and asked appellant if he could search the building. Officer Hubbard further testified that appellant agreed and started to open the door with a key when another individual exited the building. Officer Hubbard then entered the building. He testified that he smelled a strong odor of ether and observed a fog or vapor inside. The building contained tools and cleaning supplies, as well as numerous items used in the manufacture of methamphetamine.

Tracy Spencer, a narcotics investigator with the Arkansas State Police, testified that inside the shed he found two HCL generators that consisted of two twenty-ounce plastic bottles sealed with plastic tubing. These items were found underneath a work bench along a wall. He testified that the HCL generators were emitting a heavy white vapor. He further stated that prolonged exposure to the

fumes can cause health problems and that there was a danger of explosion. Officers also found two-gallon water jugs, empty ephedrine tablet bottles, coffee filters, heating elements, syringes, muriatic acid, sulfuric acid, denatured alcohol, and funnels, all in plain view inside the building.

At the hearing on his motion to suppress, appellant testified that he did not give Officer Hubbard consent to search the shed. Appellant admitted he was aware that methamphetamine was being manufactured inside the building.

Appellant's mother testified that she was the executive director of the Atkins Housing Authority where appellant was employed as a part-time maintenance person. She testified that the storage building was used by the housing authority to store tools and complete repair work. She testified she and appellant had keys to the building.

The trial court found that appellant lacked standing to challenge the search. Appellant contends that he had standing to challenge the search because he controlled the building as his workplace.

Fourth Amendment rights against unreasonable searches and seizures are personal in nature. *Rakas v. Illinois*, 439 U.S. 128 (1978). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Ramage v. State*, 61 Ark. App. 174, 966 S.W.2d 267 (1998). It is well settled that the defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated. *Id.* A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property. *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997). One is not entitled to automatic standing simply because he is present in the area or on the premises searched or because an element of the offense with which he is charged is possession of the thing discovered in the search. *Ramage, supra.* The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id.*

We have found no cases from our court or our supreme court addressing the specific issue raised in the case at bar. However,

it has been recognized that employees may have a reasonable expectation of privacy in their offices against intrusions by police. *See Mancusi v. DeForte*, 392 U.S. 364 (1968). The United States Supreme Court has stated that the expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home. *New York v. Burger*, 482 U.S. 691, 700 (1987). Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis. *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987).

█ Courts that have addressed similar issues have considered whether the employee had a property or possessory interest in the thing seized or the place searched, had a right to exclude others from that place, exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, took precautions to maintain privacy, and was legitimately on the premises. *See United States v. Cardoza-Hinojosa*, 140 F.3d 610 (5th Cir.), *cert. denied*, 525 U.S. 973 (1998) (holding that the defendant lacked a reasonable expectation of privacy in shed where he operated a part-time welding business because he kept shed unlocked, arranged for participants in drug transaction to meet there, did not object when the transaction was conducted inside the shed, and was not on the premises at the time of the search); *United States v. Anderson*, 154 F.3d 1225 (10th Cir. 1998), *cert. denied*, 526 U.S. 1159 (1999) (holding that the defendant had standing to seek suppression of evidence obtained as a result of the search of a vacant room in the office building of a corporation in which defendant was a corporate officer).

██ In the case at bar, appellant did not own the shed, nor did he have the right to exclude others from the government-owned storage shed; he was only a part-time employee and the director of the housing authority also had a key to the building. Anyone else entering the shed could observe, in plain view, the various items of paraphernalia; thus the items were not stored in a manner indicating anything of a private or personal nature. The building did not house an office environment; there was no desk or phone. It was used mainly for storage, and appellant was provided access to the shed for the purpose of facilitating work on behalf of the Atkins Housing Authority. Appellant has also not shown that he was legitimately on the premises at the time of the search. While

appellant no doubt intended the planned activities within the shed to remain private, the United States Supreme Court has explicitly stated that the "subjective expectation of not being discovered" while conducting criminal activities is insufficient to create a legitimate expectation of privacy. *Rakas,* 439 U.S. at 143-44 n. 12. We conclude that appellant did not have a reasonable expectation of privacy in the storage building, and thus did not have standing under the Fourth Amendment to challenge the warrantless search.

Affirmed.

BIRD and GRIFFEN, JJ., agree.