The Honorable Stephen D. Bright State Representative 49 Oak Forest Loop Maumelle, Arkansas 72113-6816
Dear Representative Bright:
This is in response to your request for an opinion on seven questions concerning nursing home facilities and electronic monitoring devices. Specifically, your seven questions are as follows:
 1. Does a nursing home facility have the right under state law to deny a resident in a nursing home to [sic] install an electronic monitoring device (EMD), whether it is video or audio?
 2. Does the nursing home have the right to deny admission or kick out a resident that wants or tries to install one of these EMDs where notice is given to all who enter the room informing the use of the EMD and the roommate, if any, agrees to the EMD in the room. This could also be requested by the legal guardian of the resident.
 3. Does it make any difference if the resident is private pay or Medicare pay? Do they still have the same rights as far as getting these devices in their rooms?
 4. Do the workers rights affect the use of these devices in these facilities?
 5. What rights do renters have . . . i.e., apartment complexes to install these types of devices in their domicile and do these rights differ from the ones nursing home residents have?
 6. Do the nursing homes have the rights to put these EMDs in the rooms if THE FACILITY wants to? Would they have to get the permission of the resident?
 7. Is the room considered home to them and what rights does that bring to the resident?
RESPONSE
It is my opinion that no state law currently governs the issue posed in questions 1 and 2 above. Although A.C.A. § 20-10-1204 (Repl. 2000) guarantees long-term care facility residents certain rights, the statute does not mention or guarantee the right to install the equipment you describe. As such, the matter is one of contract between the parties. To my knowledge, in response to your third question, there is no federal regulation that would differentiate between Medicare patients and "private pay" patients on this issue. In response to your fourth question, although a private nursing home employee could conceivably allege a privacy claim under state common law privacy principles, in my opinion the Arkansas Supreme Court would not uphold such a claim as long as the employee was given notice of the surveillance. Notice of the surveillance would also negate any violation of A.C.A. § 5-16-101, which criminalizes "video voyeurism." In my opinion, in response to your fifth question, the rights of apartment "renters" may also be governed by contract, or any applicable lease provision. In response to your sixth question, in my opinion a nursing home does not have the right to install electronic monitoring equipment in a patient's room without the permission of the resident. In response to your seventh question, the resident's rights are those guaranteed in A.C.A. § 20-10-1204 and those arising by contract.
Question 1 — Does a nursing home facility have the right under state lawto deny a resident in a nursing home to [sic] install an electronicmonitoring device (EMD), whether it is video or audio?
State law does not address this issue. Section 20-10-1204 of the Arkansas Code states, however, in pertinent part that:
 (a) All long-term care facilities shall adopt and make public a statement of the rights and responsibilities of the residents of the facilities and shall treat the residents in accordance with the provisions of that statement.[1]
The remainder of the statute lists certain mandatory rights that must be assured by each long-term care facility. The enumerated list of rights guaranteed to residents of such facilities, however, does not include the right to install or maintain the type of equipment you describe. Absent any controlling law on the question, it is my opinion that the matter is one governed by the agreements and contracts between the parties.
Question 2 — Does the nursing home have the right to deny admission orkick out a resident that wants or tries to install one of these EMDswhere notice is given to all who enter the room informing the use of theEMD and the roommate, if any agrees to the EMD in the room? This couldalso be requested by the legal guardian of the resident.
See response to Question 1. The issue is governed by the contract between the parties.
Question 3 — Does it make any difference if the resident is private payor Medicare pay? Do they still have the same rights as far as gettingthese devices in their rooms?
I am not aware of any pertinent federal regulations that would alter the conclusions reached above for Medicare or Medicaid patients.
Question 4 — Do the workers rights affect the use of these devices inthese facilities?
To the extent your question involves the employees of private nursing homes or facilities, it is my opinion that the answer is in all likelihood "no." It is clear, in the absence of "state action" (i.e., a government or quasi-governmental nursing home or facility), that the strictures of the Fourth Amendment against unreasonable searches or seizures do not restrict the actions of private employers. See e.g. Blumv. Yaretsky, 457 U.S. 991, 1002-12 (1982) (private nursing home was not a state actor despite extensive regulation and payments from the state); and Alexander v. Pathfinder Inc., 189 F.3rd 735 (8th Cir. 1999) (constitutional claims will not lie against a non-state actor and fact that private entity receives Medicaid funds does not convert it into a state actor).
The only other potential "right" of such an employee would be to bring a tort action against the employer for an invasion of privacy, specifically, an action for one of the four kinds of such recognized actions, an "intrusion into solitude or seclusion." See, e.g., Milam v.Bank of Cabot, 327 Ark. 256, 937 S.W.2d 653 (1997); Embry v. State,70 Ark. App. 122, 15 S.W.3d 367 (2000); and Fletcher v. Price ChopperFoods, 220 F.3rd 871 (8th Cir. 2000). Arkansas courts have had little opportunity to analyze such claims arising in the workplace. See Embry v.State, supra. In my opinion, however, the Arkansas Supreme Court would not uphold such a claim where the employer has a legitimate reason for the monitoring and the employee is informed of the surveillance. Cf.,Alexander v. Pathfinder, Inc., supra (mother of mentally retarded son failed to state a claim against intermediate care facility at which son had been a patient for invasion of privacy under Arkansas law, based on the audiotaping of conversations between her and facility's employees, especially in light of the fact that facility had legitimate reason for making the recordings and that mother knew she was being recorded).
Similarly, informing the employee of any electronic monitoring negates any concern under A.C.A. § 5-16-101, which prohibits and criminalizes "video voyeurism." That statute proscribes only "secret" observation or recording in certain circumstances and only where the person being viewed has not consented to the observation. Id. at (a).[2]
Question 5 — What rights do renters have . . . i.e., apartment complexesto install these types of devices in their domicile and do these rightsdiffer from the ones nursing home residents have?
In my opinion lessees under a residential apartment lease have whatever rights are guaranteed them by their lease contract. In this sense, their legal rights do not differ markedly from the rights of nursing home residents, whose rights are guaranteed by A.C.A. § 20-10-1204 or by contract. The practical difference, however, is that apartment lessors may be relatively unconcerned, as a matter of contract, in the electronic monitoring of the interior of an apartment which the landlord has a much more limited need to visit.
Question 6 — Do the nursing homes have the rights to put these EMDs inthe rooms if THE FACILITY wants to? Would they have to get the permissionof the resident?
In my opinion such a facility does not have the right to install such a device under current law without the permission of the resident. Section20-10-1204 (Supp. 1999), which again, guarantees certain rights to long-term care facility residents, lists among those rights the following:
 (a)(9) The right to have privacy in treatment and in caring for personal needs, to close room doors and to have facility personnel knock before entering the room except in the case of an emergency or unless medically contraindicated, and to security in storing and using personal possessions. Privacy of the resident's body shall be maintained during, but not limited to, toileting, bathing, and other activities or personal hygiene, except as needed for resident safety or assistance.
* * *
 (a)(16)(A)(i) The right to private and uncensored communication, including, but not limited to, receiving and sending unopened correspondence. . . .
These statutory provisions, in my opinion, prohibit a nursing home facility from unilaterally installing electronic monitoring devices in a resident's room. Such installation would deny residents the privacy guaranteed them by A.C.A. § 20-10-1204.[3] Section 20-10-1204 is not clear as to whether residents may agree to deprivations of their privacy, or whether they may voluntarily waive the rights guaranteed them under statute. A question exists, in my opinion, under current law, as to whether a nursing home could install such electronic monitoring equipment in a resident's room even with the resident's permission. While this action might be unobjectionable in a given case, in my opinion a facility could not require such permission from every resident upon admittance to the facility and thereby require the residents to waive rights guaranteed by A.C.A. § 20-10-1204.
Question 7 — Is the room considered home to them and what rightsdoes that bring to the resident?
As stated previously, the residents have the rights guaranteed by A.C.A. § 20-10-1204 and by contract.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] It appears that this statute, which was enacted as a part of a 1999 act, may supercede A.C.A. § 20-10-1003, adopted in 1988, which also discusses the rights of such residents. See, e.g., Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964) (a repeal by implication is accomplished where the legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new). See also Morrison v. Jennings,328 Ark. 278, 293, 943 S.W.2d 559 (1997) and Uilkie v. State, 309 Ark. 48,53, 827 S.W.2d 131, 134 (1992).
[2] Of course the resident must also consent to video taping under this statute. In addition, at least one of the parties to the communication must consent to the recording or a separate criminal violation may occur. See A.C.A. § 5-60-120 (prohibiting interception and recording of certain communications).
[3] Absent the permission of the resident, such unilateral action on the part of the nursing home may also constitute the crime of "video voyeurism." See A.C.A. § 5-16-101 (Supp. 1999), discussed supra.