Cite as 2015 Ark. App. 669

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-15-560

| | |
|---|---|
| | **Opinion Delivered** November 18, 2015 |
| SHANE EDWARD RAMSEY<br>APPELLANT | APPEAL FROM THE BOONE<br>COUNTY CIRCUIT COURT<br>[NO. CR-2014-100-4] |
| V. | HONORABLE GORDON WEBB,<br>JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Pursuant to Arkansas Rule of Criminal Procedure 24.3, appellant Shane Ramsey entered a conditional plea of guilty in the Boone County Circuit Court to possession of drug paraphernalia and theft of property. He was sentenced to four years in the Arkansas Department of Correction for each conviction, to run concurrently. On appeal, Ramsey argues the trial court erred in denying his motion to suppress. We affirm.

Ramsey was charged with possession of drug paraphernalia and theft of property as a result of events that took place on April 11, 2014. Ramsey filed a motion to suppress, alleging that Boone County sheriff's deputies conducted a warrantless search of a building[1] that he was in. Ramsey alleged that the deputies illegally entered the building; searched it, seizing a white pickup truck that had been reported stolen; and searched him, seizing drug paraphernalia. Ramsey further alleged that warrantless searches are per se unreasonable under the federal and

---

[1] The building was described as a small detached shed/garage that was in disrepair.

state constitutions and that no exceptions to the search-warrant requirement applied. He contended that he had a reasonable expectation of privacy in the building and that the search and seizure were unreasonable. Accordingly, Ramsey contended that the truck and the drug paraphernalia seized as a result of the unconstitutional search should be suppressed.

At the suppression hearing, Captain Tom Smith of the Boone County Sheriff's Department testified that on April 11, 2014, before he left home for work, he received a call from a retired sheriff's department employee reporting that he had found several items of property—that looked as though they had been discarded from a vehicle—on the ground near his property. On his way to pick up the items, Smith called the sheriff's department and learned that a white pickup truck had been reported stolen the night before. Smith collected the items, which identified the victim and included a cell phone. Smith contacted the victim, who advised that the phone was not his. Smith looked at the phone and determined that it belonged to Ramsey, whom Smith knew. Smith saw a text message on the phone from Chris White, whom Smith also knew.

Smith and another investigator drove to White's home and visited with him under his carport. While they were visiting, Smith said that they heard loud banging coming from a small building approximately sixty to seventy feet from them. Smith asked White about the noise, and White said that Ramsey was in the building. Smith testified that he and the other officer walked to the front door of the building wherein, to his right, he saw a white pickup truck. Smith said that, to his left, he saw Ramsey and a woman. Smith knocked on the door, immediately opened it, and yelled, "Sheriff's office." He entered the building with his gun raised, walked to Ramsey, who had a ratchet in his hand, and ordered him to drop it. Ramsey

SLIP OPINION

was arrested and searched, which led to the discovery of drug paraphernalia. Smith testified that he did not have a search or arrest warrant and that Ramsey did not give him permission to enter the building.

Ramsey testified that Captain Smith entered, without permission or a warrant, the building where he worked on vehicles. Ramsey stated that he had been renting the building from White for $200 per month for the past six to eight months. Ramsey said that there was only one vehicle in the building on April 11, and that he did not know it had been stolen. He said that someone had brought it to him four to six hours before, asking him to remove the stereo. Ramsey also testified that his sole source of income was monthly disability payments of $700 and that he lived just down the road from the building. He testified that his home sat on twenty-two acres; however, he preferred to work on his vehicles in White's building.

The trial court issued a letter opinion on February 25, 2015, denying Ramsey's motion to suppress. Thereafter, the trial court's order denying the motion to suppress, Ramsey's conditional plea, and a sentencing order were entered, convicting Ramsey of possession of drug paraphernalia and theft of property and sentencing him to four years in prison for each count to run concurrently. This appeal followed.

Our standard of review for a trial court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the circumstances, to review findings of historical facts for clear error, and to determine whether those facts give rise to reasonable suspicion or probable cause, while giving due weight to inferences drawn by the trial court. *Robinson v. State*, 2014 Ark. 101, at 2–3, 431 S.W.3d 877, 878.

The United States and Arkansas Constitutions protect the right of the people to be secure in their homes, papers, and effects, against unreasonable searches and seizures. U.S. Const. Amend. IV; Ark. Const. art. 2, § 15. Property located on one's person, at one's residence, or within the curtilage surrounding the residence may not be seized without a search warrant or pursuant to other legal means. *Sanders v. State*, 264 Ark. 433, 436, 572 S.W.2d 397, 398 (1978). Ramsey contends that the facts were undisputed that Captain Smith did not have a warrant to search Ramsey or the building; therefore, his Fourth Amendment rights were violated. He also asserts that no exception to the warrantless requirement applies in this case.

The problem with Ramsey's argument is that the building where the search was conducted was not his home or his property; thus, he lacks standing to challenge the search. Because Fourth Amendment rights against unreasonable searches and seizures are personal in nature, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Embry v. State*, 70 Ark. App. 122, 125, 15 S.W.3d 367, 369 (2000) (citations omitted). It is well settled that the defendant, as the proponent of a motion to suppress, bears the burden of establishing that his Fourth Amendment rights have been violated. *Id.*, 15 S.W.3d at 369. A person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property. *Id.*, 15 S.W.3d at 369 (citing *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997)). One is not entitled to automatic standing simply because he is present in the area or on the premises searched or because an element of the offense with which he is charged is possession of the thing discovered in the search. *Id.*, 15 S.W.3d at 369. The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of

privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id.*, 15 S.W.3d at 369.

We hold that the trial court did not clearly err in concluding that Ramsey lacked standing to assert a violation of his Fourth Amendment rights and contest the search because he failed to establish that he had a legitimate expectation of privacy in the building. Ramsey did not own the shop building. It belonged to White. And White not only made no objection to the officers' presence, but he directed the officers to his building, advising them that Ramsey was in it. The trial court found that "[b]eing a non-residential structure in an open field on somebody else's property, who is not asserting any Fourth Amendment rights, clearly reduces the level of expectation of privacy that party should have in occupancy of such a building."

We reject Ramsey's argument that he manifested a subjective expectation of privacy in the shop building as demonstrated by his testimony that he had been renting the building for months. The trial court expressly found that Ramsey's testimony lacked veracity, stating, "It is particularly difficult to give great credibility to this issue when his testimony was that he owned [twenty-two] acres within walking distance of the White residence." The trial court also expressed its skepticism of Ramsey's testimony based on his "very low level of income" of $700 per month and the $200 per month he claimed to have paid to rent the building. We give due weight to inferences drawn by the trial court. *Robinson*, 2014 Ark. 101, at 2–3, 431 S.W.3d at 878.

In addition to the findings made by the trial court, we further note that Ramsey failed to introduce into evidence a written rental agreement, testimony from White about an oral rental agreement, or other proof of payment to White to corroborate Ramsey's testimony.

5

Also, Smith testified that on the day of the incident, neither White nor Ramsey stated that Ramsey was renting the building. Because Ramsey failed to prove that he had a reasonable expectation of privacy in White's shop building, we hold that the trial court did not clearly err in finding that he failed to meet his burden of establishing standing to challenge the search.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.