N. MARK KLAPPENBACH, Judge
Appellant Cameron Anderson was found guilty after a jury trial in Desha County Circuit Court for the crimes of aggravated robbery, theft of property, and attempted capital murder. Anderson appeals the denial of his pretrial motion to suppress evidence gained in a search of an apartment in Monticello, Arkansas. The search was initiated after one of the apartment residents had given his consent to search. We hold that the trial court's denial of the motion to suppress was not clearly erroneous. We therefore affirm.
Our standard of review for a trial court's action granting or denying motions to suppress evidence obtained by a warrantless search requires that we make an independent determination based on the totality of the circumstances, giving respectful consideration to the findings of the trial court. Love v. State , 355 Ark. 334, 138 S.W.3d 676 (2003). We give considerable weight to the findings of the trial court in the resolution of evidentiary conflicts and defer to the superior position of the trial court to pass on the credibility of witnesses. Breshears v. State , 94 Ark.App. 192, 228 S.W.3d 508 (2006). Illegal entry by law enforcement officers into the homes of citizens is the "chief evil" the Fourth Amendment is intended to protect against and therefore is of the highest degree of seriousness. Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Warrantless entry into a private residence is presumptively unreasonable under the Fourth Amendment. Latta v. State , 350 Ark. 488, 88 S.W.3d 833 (2002). Nonetheless, that presumption may be overcome if the police officer obtained consent to conduct a warrantless search. See Stone v. State , 348 Ark. 661, 74 S.W.3d 591 (2002). Consent to search the premises can be given only by a person who, by ownership or otherwise, is apparently entitled to give or withhold consent. Ark. R. Crim. P. 11.2(c) (2017). The determination of third-party consent, like other factual determinations relating to searches and seizures, must be judged against an objective standard. See Hillard v. State , 321 Ark. 39, 900 S.W.2d 167 (1995). The test is whether the facts available to the police officer at the moment would warrant a person of reasonable caution to believe that the consenting party had authority over the premises. Id.
Because Fourth Amendment rights against unreasonable searches and seizures are personal in nature, a defendant must have standing before he or she can challenge a search on Fourth Amendment grounds. Ramsey v. State , 2015 Ark. App. 669, 476 S.W.3d 214. It is well settled that the defendant, as the proponent of a motion to suppress, bears the burden of establishing that his or her Fourth Amendment rights have been violated. Embry v. State , 70 Ark.App. 122, 15 S.W.3d 367 (2000). A defendant may testify at a suppression hearing regarding the proprietary or possessory interest necessary to establish standing without danger of self-incrimination. Ramage v. State , 61 Ark.App. 174, 966 S.W.2d 267 (1998). A *282 person's Fourth Amendment rights are not violated by the introduction of damaging evidence secured by a search of a third person's premises or property. Id. One is not entitled to automatic standing simply because he or she is present in the area or on the premises searched or because an element of the offense with which he or she is charged is possession of the thing discovered in the search. Id. A visitor usually lacks a rightful expectation of privacy when present in the home of another unless the visitor stays overnight. See Minnesota v. Carter , 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ; United States v. Hood , 551 F.Supp.2d 766 (W.D. Ark. 2008). The pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. Littlepage v. State , 314 Ark. 361, 863 S.W.2d 276 (1993) ; Anderson v. State , 103 Ark.App. 137, 286 S.W.3d 763 (2008).
The facts presented at the suppression hearing were as follows. Anderson was a person of interest in the investigation of an August 21, 2015 armed robbery of a Sonic in Dumas, Arkansas. The Monticello police had received a tip that Anderson might be at a particular apartment in Monticello on Gabbert Street. At that time, Tyrequs Davis and his brother, Jarius McCraney, were living at that apartment, located at 517 South Gabbert, Apartment B. McCraney's mother had paid the bills on the apartment for the month of August. Davis and McCraney each had his own bedroom; McCraney occupied the master bedroom, which had a closet. No one else lived in that apartment during August 2015.
The police chief of Monticello, Eddie Deaton, testified that he and other officers went to the apartment and made contact with Davis at the door. Deaton told Davis that they had received information that Anderson might be at this apartment and that they would like to come in to look if Davis would consent. According to Deaton, he obtained Davis's consent without using any coercion, threats, or harassment. Deaton asked Davis to sign a written consent if he agreed to it. Davis signed. Upon entry into the living room where two other men were playing video games, Deaton and Captain Carlos Garcia smelled the odor of marijuana, which odor Deaton mentioned to Davis. Garcia testified that Deaton was the one who spoke with Davis, and Garcia confirmed that consent was obtained before they entered the apartment and smelled marijuana. The officers went through the living room and kitchen, searched Davis's bedroom, and then went into the other bedroom, where they found Anderson hiding in a closet under some clothing. Anderson was taken into custody.
Deaton testified that they were also looking for weapons related to the armed robbery, although Deaton did not specifically ask for consent to search for weapons in the apartment. A backpack was at the foot of the bed about ten feet from the closet where Anderson had been hiding. Officers unzipped the backpack, and inside they found papers with the name "Lamark Patton" handwritten on them along with a handgun.
Davis also testified at the hearing. Davis characterized Anderson as "an acquaintance," and as far as he knew, Anderson had never stayed the night at the apartment. Davis stated, "I just know him when I see him." Anderson was his brother's friend, but Davis did not remember Anderson ever visiting the apartment when he (Davis) was there. He recalled that at around 1:45 a.m. on August 23, 2015, the Monticello police came to the apartment, and he answered the door. He testified that he did not know Anderson *283 was inside his apartment when the police came to the door. Davis agreed that he gave his written consent to search the apartment but said that he gave consent only after the police had told him that they smelled weed and that he had to sign it. Neither Anderson nor McCraney testified at the suppression hearing.
Anderson filed a motion to suppress the evidence arguing that (1) valid consent was not acquired, and alternatively (2) the police exceeded the scope of any consent by searching the backpack. The trial court found that both Davis and McCraney had the right to consent to the search of the apartment; that Chief Deaton was more credible about whether the consent to search was freely and voluntarily acquired from Davis, especially since his testimony was corroborated by Captain Garcia; and that Anderson failed to establish "some privacy interest or property interest or expectation of privacy in this location." The motion to suppress was denied. Following the jury trial, Anderson filed this appeal.
Anderson contends on appeal that the trial court clearly erred in the following ways: (1) by finding that the State established that Davis's consent was freely and voluntarily given; (2) by not finding that the search of the backpack exceeded the scope of Davis's consent to search for Anderson; and (3) by finding that Anderson lacked standing to assert an expectation of privacy in the backpack. We hold that the trial court did not clearly err in finding that Anderson lacked standing to challenge the search of the apartment or the backpack, rendering any discussion about the validity and scope of Davis's consent moot. Even so, Davis clearly had the authority to consent to the search, the trial court was convinced that Davis had freely and voluntarily given consent to search, and Davis never limited or restricted the scope of that consent while officers were present.
To explain, a defendant's rights are violated only if the challenged conduct invaded his legitimate expectation of privacy, rather than that of a third party, and the proponent of a motion to suppress bears the burden of establishing that his or her Fourth Amendment rights have been violated. Gaylord v. State , 354 Ark. 511, 127 S.W.3d 507 (2003). Anderson failed to present any evidence (testimony or otherwise) to support the assertion that he possessed a reasonable expectation of privacy in the apartment or the backpack. There was no evidence to indicate that Anderson was an overnight guest in the apartment. In contrast, the State presented ample evidence that Davis possessed authority to consent to the search, and it presented evidence deemed credible by the trial court that the consent was freely and voluntarily given by Davis. The State presented evidence that Davis considered Anderson an acquaintance and did not believe that Anderson had ever stayed overnight at this apartment. Davis said that he was unaware that Anderson was in the apartment when officers knocked on the door. Moreover, the backpack contained papers with a different person's name on them, supporting a reasonable inference that the backpack did not belong to Anderson. Anderson did not assert a possessory interest in the backpack or its contents at the suppression hearing. After applying the proper standard of review to this matter, we hold that the trial court did not clearly err in denying the motion to suppress.
Affirmed.
Virden and Murphy, JJ., agree.