[Cite as *State v. Coopman*, 2015-Ohio-457.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                    Court of Appeals No. F-14-003

    Appellant                               Trial Court No. 14CR0000002

v.

Michael Coopman, Jr.                      **DECISION AND JUDGMENT**

    Appellee                                 Decided:  February 6, 2015

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellant.

Sheldon S. Wittenberg, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** This is an accelerated appeal by the state of Ohio of a May 7, 2014 judgment of the Fulton County Court of Common Pleas granting appellee's motion to suppress evidence.  Michael Coopman, Jr. is appellee.  He was indicted on January 14, 2014, by the Fulton County Grand Jury on a single count of knowingly obtaining, possessing, or

using anabolic steroids, a schedule III controlled substance. According to the charge, the amount of the drug involved exceeded five times the bulk amount but was less that fifty times the bulk amount, constituting a violation of R.C. 2925.11(A) and a third degree felony.

{¶ 2} This is an interlocutory appeal by the state pursuant to R.C. 2945.67 and Crim.R. 12(K). The dispute concerns items that Coopman kept in a lockbox in a storage unit. The contents of the storage unit were sold at public auction by the owner of the self-storage facility where they were kept. The purchaser opened the lockbox, inspected it, and gave the lockbox and its contents to police. The state contends that the lockbox contained anabolic steroids.

{¶ 3} On February 26, 2014, appellee filed a motion to suppress all evidence of the contents of the lockbox on the grounds that the evidence was procured by a warrantless search in violation of the Fourth Amendment to the United States Constitution. Appellee also contended in the trial court that the evidence also should be suppressed on two additional grounds: (1) because the actions of the police officer in securing the evidence were extraterritorial; that is, occurred outside of the jurisdiction of the Wauseon Police Department and (2) the officer who secured the evidence kept the drugs in his personal locker at the Wauseon Police Station for over 16 months before turning them over to the sheriff.

{¶ 4} In the May 7, 2014 judgment, the trial court granted appellee's motion to suppress, ruling that the state should have secured a search warrant for the search. The

2.

court also ruled that "the Officer's personal possession of the contraband seized, for over a sixteen month period, constitutes a 'latches,' violation of protocol, and a 'spoilation' that cannot, at this date, be remedied."

## Assignment of Error

{¶ 5} The state of Ohio asserts one assignment of error on appeal:

1. The trial court erred when it granted appellee's motion to suppress.

{¶ 6} Appellate review of a trial court's ruling on a motion to suppress evidence presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Ohio Supreme Court has identified our standard of review:

[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539. *Id.*

**Statutory Lien of Owner of Self-Service Storage Facility**
**and Enforcement**

{¶ 7} As the lockbox and its contents were sold at public auction by the owner of a self-service storage facility, an understanding of R.C. 5322.02(A) and 5322.03 will aid in placing the testimony on the motion to suppress in context. R.C. 5322.02(A) provides for a statutory lien of the owner of a self-service storage facility against an occupant of a storage space at the facility on personal property stored there under specified circumstances:

> (A) *The owner of a self-service storage facility has a lien against the occupant on the personal property stored pursuant to a rental agreement in any storage space at the self-service storage facility*, or on the proceeds of the personal property subject to the defaulting occupant's rental agreement in the owner's possession, *for rent, labor, or other charges* in relation to the personal property that are specified in the rental agreement and that have become due and for expenses necessary for the preservation of the personal property or expenses reasonably incurred in the sale or other disposition of the personal property pursuant to law. The owner's lien provided for in this section is also effective against the following persons: * * *. (Emphasis added.)

{¶ 8} R.C. 5322.03 is entitled "enforcement procedures" and specifies how an owner's lien under 5322.02 may be enforced, including sale, by public auction, of the

4.

personal property stored at the self-storage facility. Included in these procedures are detailed notification and advertisement requirements. R.C. 5322.03(A), (B), and (C) (notification requirements); R.C. 5322.03(G)(1)-(4) (advertisement requirements). The statute also includes other procedural requirements to enforce the lien.

{¶ 9} R.C. 5322.03(I)(2) states that good faith purchasers at auctions conducted by owners of self-service storage facilities in enforcement of a statutory lien under R.C. 5322.02(A) take the property free and clear of the rights of persons against whom the owner's lien was valid despite noncompliance of the owner with R.C. 5322.03 requirements:

> (2) A purchaser at auction in good faith, except an owner or an owner's agent, of the personal property sold to satisfy an owner's lien created by division (A) of section 5322.02 of the Revised Code takes the property free and clear of any rights of persons against whom the lien was valid, or any persons who had an interest in, or who held, any other lien against the property, despite noncompliance by the owner with the requirements of this section. (Emphasis added.)

## Facts

{¶ 10} The hearing on the motion to suppress proceeded on April 2, 2014. Officer David Dick of the Wauseon Police Department was the only witness to testify. According to Officer Dick, on July 29, 2011, he and his daughter attended different public auctions at self-service storage facilities in the Wauseon area while he was off

5.

duty. The auctions were advertised in the Fulton County Expositor newspaper. Appellee's storage unit was one of the storage units whose contents were advertised as being up for public auction that day. Appellee's storage locker was in a storage facility located outside the city of Wauseon, near the Fulton County Airport.

{¶ 11} Officer Dick testified that he was present when the auctioneer cut off a lock to the storage unit and opened the unit up for auction. The officer testified that he noticed a Wauseon Police Department coat on the floor inside the unit and advised the auctioneer that the coat was city property and could not be auctioned off. The auctioneer picked up the coat and handed it to Officer Dick. Later someone handed Officer Dick another police department coat. The auctioneer announced at the auction that a representative of the city of Wauseon was there and that the coats could not be sold.

{¶ 12} At least 15-20 people attended the auction. Officer Dick testified that he did not go inside the unit and placed no bids at the auction. A man named Carr purchased the contents of appellee's storage unit. Afterwards, Carr closed the unit and put his own lock on it. The purchaser told Officer Dick that he was going to wait to the following day to empty the unit out.

{¶ 13} After Lieutenant O'Brian of the Wauseon Police Department and Tracy Zuver of the Fulton County Sheriff's Department talked, Lieutenant O'Brian directed Officer Dick to go back the next day to the storage unit to see if there was any other property in the unit that belonged to either the Wauseon Police Department or the Fulton

6.

County Sheriff's Department. Arrangements were made by Lieutenant O'Brian for Officer Dick to meet the purchaser at the storage unit on the following day.

{¶ 14} Carr and Dick arrived at the storage unit at the same time the next day. Officer Dick testified that he saw Carr take off his lock at the storage locker and open it up. The officer testified as to what occurred next:

> Officer Dick: He started going through the locker putting stuff out onto a truck and a trailer. And I pretty much just stood back and watched to see all what was going out. And then it was at that time he come [sic] across the lock—the lockbox. He held it up and asked me, what about this? I told him, well, you own it. Do what you want. He got a screwdriver out of his truck and he popped it open.
>
> Q: What happened then?
>
> A: At that time he opened it up. He looked down in it. And he looked back up to me, and said a few strong words the he didn't want anything to do with the box and everything in it. He was turning over to me, including the box, he didn't want it back or anything. He handed me the box.
>
> Q: What did you see in the box?
>
> A: I seen a plastic bag containing a bunch of pills. Some injectable vials, some in boxes, some out of boxes. There was, I believe, a couple of bullets in the box. That's pretty much about it I think.

7.

Q: Did you at any point, go inside the storage unit?

A: I did towards the end help him load something that was heavy.

Q: Okay. How about relative to when he handed you the box. Did you go in before or during that time?

A: I don't believe I was ever in until we loaded the—it was some kind of heavy couch-couch deal.

{¶ 15} Officer Dick was questioned on cross-examination at the hearing on why he did not seek a search warrant before a search of the contents of the storage locker on the day after the auction. Officer Dick answered "I didn't see a search warrant would be necessary when the owner was giving us the authority to go and search it."

**Standing**

{¶ 16} The state raises multiple arguments in support of its contention that the trial court erred in granting the motion to suppress. Citing a series of federal court opinions, the state argues that appellee lacked any reasonable expectation of privacy in the storage unit or lockbox after Carr purchased the contents of the storage unit. The argument presents the issue of whether appellee had standing, the capacity to challenge the legality of the search and seizure of the lockbox and its contents.

{¶ 17} The "capacity to claim the protection of the Fourth Amendment depends * * * upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), quoting *Rakas v. Illinois*, 439 U.S. 128, 143,

8.

99 S.Ct. 421, 58 L.Ed.2d 387 (1978).  A legitimate expectation of privacy is "one that

society is prepared to recognize as "reasonable."  *Rakas* at 143-144.  "The burden is upon

the defendant to prove facts sufficient to establish such an expectation."  *State v.*

*Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995), citing *Rakas v. Illinois* at 132,

fn. 1.

{¶ 18} The state argues that any reasonable expectation of privacy was lost once

the public auction began and the auctioneer removed appellee's lock from the storage

unit and opened the unit to public view for auction and upon sale of the storage unit

contents to Carr.

{¶ 19} The state cited *United States v. Lnu*, 544 F.3d 361 (1st Cir.2008); *United*

*States v. Melucci*, 888 F.2d 200 (1st Cir.1989); *United State v. Reyes*, 908 F.2d 282 (8th

Cir.1990); and *United States v. Abiodun*, S.D.N.Y. No. 04 CR. 1316(DC), 2005 WL

3117305 (Nov. 22, 2005), in support of its argument.  In *Lnu*, the U.S. Court of Appeals

for the First Circuit held that a defendant did not have a reasonable expectation of privacy

in a storage locker.  The court considered that the defendant had failed to pay rent for

several months, that by statute a storage facility operator was permitted to impose a lien

on contents of a storage space where the lessee defaults on rent, and that by state statute

and under the rental agreement the storage facility operator was permitted to deny the

lessee access to leased space where the occupant is in default for a period of five or more

days.  *Lnu* at 366.  The court held "In light of the limitations on the defendants right to

9.

control access to the storage locker, it is clear that defendants reasonable expectation of privacy did not continue up until the time (sic) the lien sale." *Id. at 367.*

{¶ 20} In *Merlucci,* the court held that a defendant did not have a reasonable expectation of privacy in his rented storage unit and lacked standing to challenge the police search. *Merlucci* at 202. The court reasoned that the defendant's failure to pay rent "coupled with * * * [the owner of the storage facility's] * * * taking possession of the unit pursuant to the lease contract by removing the lock, indicates that * * * [the defendant's] * * * possession and control over the unit had terminated by the time of the search." *Id.* In *Reyes*, the court ruled that the defendant lacked a reasonable expectation of privacy in a storage unit after the rental period expired. *Reyes* at 285.

{¶ 21} In *Abiodun*, the U.S. District Court for the Southern District of New York considered whether a reasonable expectation of privacy existed after the owner of the storage facility scheduled a public auction and placed an overlock that denied the defendant access to his storage unit. The defendant had failed to pay rent on the storage unit for three to four months. The owner of the storage facility consented to a search of the storage unit.

{¶ 22} The court ruled in *Abiodun* that the defendant no longer had a reasonable expectation of privacy in the storage unit at the time of the search. *Id.* at *3-4. The court ruled that even if the storage manager lacked authority to consent to the search, the federal agents who conducted the search had a reasonable basis for believing that he had such authority. *Id.* at *5.

10.

{¶ 23} Appellee argues that these federal decisions can be distinguished because each had evidence that the defendant had failed to pay rent and included evidence of the applicable rental agreement. Appellee argues that there is no evidence in this case that appellee failed to pay rent and the rental agreement for the storage locker is not in evidence. Appellee also argues further that evidence in the record is lacking as to whether the owner provided required notice under R.C. 5322.02 and 5322.03.

{¶ 24} We have reviewed the record. The rental agreement is not in evidence. Evidence is lacking on whether appellee had failed to make rental payments. Evidence is lacking in the record as to whether the owner of the storage facility followed R.C. 5322.03 notice procedures to enforce its lien. However, the record also contains no evidence upon which to challenge the validity of the auction and purchase.

{¶ 25} The burden is on the defendant to prove facts sufficient to establish a reasonable expectation of privacy in the invaded place in order to challenge the constitutionality of a search. *Rakas*, 439 U.S. at 132, fn. 1, 99 S.Ct. 421, 58 L.Ed.2d 387; *Williams*, 73 Ohio St.3d at 166, 652 N.E.2d 721. The uncontested evidence on the motion to suppress is that the contents of appellee's storage unit, including the lockbox and its contents, were sold at public auction pursuant to R.C. 5322.02(A) and 5233.03. The purchaser at auction took possession of the property, placing his own lock on the storage unit, prior to the claimed unconstitutional search.

{¶ 26} In our view, in order for appellee to establish a continuing reasonable expectation of privacy in the lockbox and its contents after the sale and purchase,

11.

appellee bore the burden of presenting evidence challenging the validity of the sale and purchase and challenging whether immunities afforded good faith purchasers under R.C. 523303(I)(2) applied.

{¶ 27} We conclude that appellee failed to establish a continuing reasonable expectation of privacy in the lockbox and its contents after the sale and purchase and that the trial court erred in granting appellee's motion to suppress on the grounds of the claimed unconstitutionality of a subsequent search and seizure of the property.

{¶ 28} Alternatively, the state also contends that the purchaser, Carr, consented to the search and seizure of the lockbox and its contents and that even if he lacked actual authority to consent, Carr had apparent authority upon which Officer Dick reasonably relied, citing *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

{¶ 29} "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Such consent may be obtained from "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *U.S. v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

{¶ 30} Under *Illinois v. Rodriguez*, even where the consenting third party lacked actual authority to consent to a search, the consent is still valid if the police reasonably believed that the person had authority to consent to the search. *Id.* at 188-189. Whether

12.

sufficient apparent authority exists must "'be judged against an objective standard: would the facts available to the officer at the moment * * * "warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises?" *Id.* at 188, quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Corbin*, 194 Ohio App.3d 720, 2011-Ohio-3491, 957 N.E.2d 849, ¶ 28 (6th Dist.).

{¶ 31} The state argues that as Carr purchased the contents of the storage unit at public auction, Officer Dick held a reasonable belief that Carr had authority to consent to the search of the items purchased. We conclude that Officer Dick had an objectively reasonable belief that Carr had authority to consent to search the contents of the storage unit, including the lockbox and its contents.

{¶ 32} We find the state's assignment of error well-taken in that the trial court erred in granting the motion to suppress on the ground that the evidence was secured through an unconstitutional search and seizure.

### Extraterritorial Police Conduct

{¶ 33} Appellee argues that even if consent to search was accompanied by apparent authority, the search and seizure was invalid because it occurred outside of Officer Dick's jurisdiction and evidence from the search should be suppressed, citing this court's decision in *State v. Brown*, 4 N.E.3d 452, 2013-Ohio-5351 (6th Dist.). *Brown* concerned the admissibility of evidence secured in an extraterritorial stop by a township police officer of a vehicle on an interstate highway for a marked lane violation, a

13.

misdemeanor violation of R.C. 4511.33. *Id.* at ¶ 20. We recognized in *Brown* that the township police officer lacked power, pursuant R.C. 4513.39, to make an arrest on a state highway for violation of R.C. 4511.33. *Id.* Finding a lack of any extenuating circumstances, this court ruled that evidence of drugs seized as a result of the stop should have been excluded from evidence because the stop was unreasonable under Article I, Section 14, of the Ohio Constitution.

{¶ 34} Officer Dick did not secure evidence in this case through any police action prohibited by statute. Carr voluntarily met with the officer at the storage unit outside Wauseon, near the Fulton County Airport. The purpose of the meeting was to determine whether any property of the Wauseon Police Department or Fulton County Sheriff's Department was included in Carr's purchases at auction. The record demonstrates that Carr voluntarily met with Officer Dick, opened the lockbox, inspected its contents, and voluntarily gave the items to the officer. We conclude that the decision in *Brown* does not apply to the circumstances in this case and no violation of Article I, Section 14 of the Ohio Constitution is presented in Officer Dick's activities outside the city of Wauseon.

### Spoilation, Laches, Evidence Retention

{¶ 35} Officer Dick testified that the lockbox was taken to the Wauseon Police Department where it was emptied out. The officer placed the drugs in his personal locker at the police station. The drugs were kept in the locker from July 29, 2011, until the officer turned them over to the sheriff's department on November 27, 2012. The drugs included 932 pills.

14.

**{¶ 36}** In the May 7, 2014 judgment, the trial court ruled that "the Officer's personal possession of the contraband seized, for over a sixteen month period, constitutes a 'latches,' violation of protocol, and a 'spoilation' that cannot, at this date, be remedied."

**{¶ 37}** The state argues that the equitable doctrine of laches does not apply against the state in criminal actions, that no spoilation of evidence occurred, and that there is no basis at law for suppression of the evidence based upon how the drugs were kept after they were secured. The state argues that these issues present no basis to grant a motion to suppress. Appellee acknowledges these issues but offers no legal argument in support of suppression of evidence on these grounds.

**{¶ 38}** "Specific tests are applied to determine whether the state's failure to preserve evidence rises to the level of a due process violation. The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 73.

**{¶ 39}** To be constitutionally material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Powell* at ¶ 74. In *California v. Trombetta*, the United States Supreme Court held "that the government violates a defendant's due process rights when material exculpatory evidence is not preserved." *Id.* at ¶ 74.

15.

{¶ 40} In *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the United States Supreme Court considered the "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The *Youngblood* court applied a different standard where the state fails to preserve potentially useful evidence:

> *Youngblood* made a clear distinction between materially exculpatory evidence and potentially useful evidence. "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10." *Powell* at ¶ 77.

{¶ 41} Evidence in the record is lacking to support a claim that the state, through the manner in which the drugs were stored, failed to preserve or destroyed evidence. Accordingly, no due process violation is shown arising from the manner the state preserved evidence.

{¶ 42} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence." *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984). It is recognized that, absent a statute to the contrary, the defense of laches does not apply

16.

against the state in its exercise of governmental functions. *State ex rel. Petro v. Maurer Mobile Home Court, Inc.*, 6th Dist. Wood No. WD-06-053, 2007-Ohio-2262, ¶ 74-75.

{¶ 43} Even were laches to apply against the state in a criminal case, there is no showing of prejudice to appellee in the record as a result of the officer's delay in turning possession of the contraband to the sheriff's department. There is also no showing of prejudice by the failure of Officer Dick to use any other evidence retention protocol.

{¶ 44} We conclude that the trial court erred in granting appellee's motion to suppress on the additional grounds of spoilation of evidence, laches, and violation of protocol in handling of the evidence.

{¶ 45} We find the state's assignment of error well-taken.

{¶ 46} We reverse the May 7, 2014 judgment of the Fulton County Court of Common Pleas granting appellee's motion to suppress evidence and remand this case to the trial court for further proceedings. We order appellee to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

17.

Mark L. Pietrykowski, J.            _____
                                                    JUDGE

Arlene Singer, J.            

James D. Jensen, J.                _____
CONCUR.                                          JUDGE

                                   _____
                                                    JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.